The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

2016 CO 19
Supreme Court Case No. 15SC298
Certiorari to the Colorado Court of Appeals
Court of Appeals Case No. 13CA1900

Petitioner:
The People of the State of Colorado,
 In the Interest of Respondent:
E.G.

Judgment Affirmed

en banc
 
April 18, 2016

Attorneys for Petitioner: 
Cynthia H. Coffman, Attorney General
Jacob R. Lofgren, Assistant Attorney General

Denver, Colorado

Attorneys for Respondent: 
Douglas K. Wilson, Public Defender
Ryann S. Hardman, Deputy Public Defender

Denver, Colorado

CHIEF JUSTICE RICE delivered the Opinion of the Court. JUSTICE GABRIEL concurs in the judgment.
 
 
¶1        In this case we must decide whether a trial court has the authority to grant a defendant’s discovery motion seeking access to the private residence of a third party. The defendant, E.G., was convicted of two counts of sexual assault on a child as part of a pattern of sexual abuse. Before trial, he filed a motion requesting court-ordered access to his grandmother’s basement—the scene of the crime. The trial court concluded that it had no authority to order such access and denied the motion.
¶2        The court of appeals disagreed with the trial court’s reasoning, though not its result. People in the Interest of E.G., 2015 COA 18, ¶ 6, __ P.3d __. It held that a trial court does indeed have authority to order defense access to a third-party residence. Id. It nevertheless affirmed the denial of the motion for access because it concluded that E.G. had "failed to demonstrate" that inspection of the crime scene was "necessary to present his defense." Id. at ¶ 17. We granted the People’s petition for certiorari to determine under what circumstances—if any—a trial court has authority to grant a defendant access to a private residence.[1] We conclude that the trial court lacked authority to order such access and therefore affirm on alternate grounds.

I. Facts and Procedural History

¶3        E.G. was charged as an aggravated juvenile offender, and a jury found him guilty of two counts of sex assault on a child as part of a pattern of abuse. See §§ 18-3-405(1), (2)(d); 19-2-601, C.R.S. (2015). The victims were twelve-year-old twin brothers who disclosed to their father that their older cousin, E.G., had repeatedly raped them several years earlier in the basement of their mutual grandmother’s house.
¶4        Prior to trial, E.G. moved the court to order the victims’ grandmother "to allow Defense Counsel and [her investigator] to have access to the residence" so that counsel could "view and photograph the crime scene."[2] As grounds for his motion, E.G. cited authority from other jurisdictions suggesting that such access was necessary under principles of fundamental fairness and due process of law. The court denied the motion, reasoning that it could not "order a private entity to open up their private residence." The court explained that it had not seen "any Colorado law, statutory or case law that indicate[d]" that the court had any authority to order the requested access. The trial went forward, and E.G. was convicted.
¶5        On appeal, E.G. challenged the denial of his motion for access to the home, and the court of appeals held that the trial court erred when it held that it did not have the authority to order defense access to the private property of a non-party. E.G., ¶ 15. According to the court of appeals, the trial court’s authority stemmed from the defendant’s "constitutional right to present evidence on his behalf and to confront adverse witnesses" and the right to "compel material evidence from private third parties." Id. at ¶ 8. To obtain such access, the court explained, a defendant "must demonstrate that the evidence is relevant, material, and necessary to his defense, and the court must balance the defendant’s proffered justification with the rights and legitimate interests of the non-party." Id. at ¶ 15. After creating this test, the court of appeals subsequently concluded that E.G. failed to satisfy it. Id. at ¶ 17. Thus, the court of appeals affirmed the trial court’s denial of the motion for access on alternate grounds. Id. at ¶¶ 23–24. We granted the People’s petition for certiorari.

II. Standard of Review

 
¶6        Generally speaking, appellate courts will review a trial court’s discovery order in a criminal case for abuse of discretion. See Crim. P. 16(I)(d)(1); People ex rel. Shinn v. Dist. Ct., 469 P.2d 732, 733–34 (Colo. 1970). However, a trial court abuses its discretion if it exceeds the bounds of its legal authority. See Spahmer v. Gullette, 113 P.3d 158, 164 (Colo. 2005). Thus, the precise question we are faced with today—whether a trial court has the authority to order a third party to open her home to the defendant—presents a legal question that we will review de novo. See Stackhouse v. People, 2015 CO 48, ¶ 4, __ P.3d __.

III. Analysis

 
¶7        Defendant argues that the trial court erred when it denied his motion for investigatory access to a non-party’s private home. The threshold question we must answer—and a question we address in conjunction with a related case, also issued today, In re People v. Chavez, 2016 CO 20, __ P.3d __—is whether a trial court has any authority to issue such an order in the first place. We analyze the potential sources of authority and conclude that nothing authorized the trial court to grant the defendant’s request for access to a private home. Because we hold that the trial court’s original ruling was correct—it did not have authority to order the access—we now affirm the court of appeals on alternate grounds.

A. The Right to be Free From Unreasonable Intrusion Into One’s Home

 
¶8        The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Colorado Constitution contains a nearly identical provision. See Colo. Const. art. II, § 7 ("The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures . . . ."). "The clearest right is to be free from unreasonable governmental intrusion into one’s home." People v. O’Hearn, 931 P.2d 1168, 1172–73 (Colo. 1997). A court order forcing an individual to open her private home to strangers is certainly government intrusion.
¶9        Under these circumstances, (1) the deprivation would be "caused by the exercise of some right or privilege created by the State" (namely, a court order) and (2) E.G., the "party charged with the deprivation," would qualify as a state actor "because he [would have] acted together with or . . . obtained significant aid from state officials"—in this case, the district court judge. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982); cf. Walter v. United States, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting) ("[T]he Fourth Amendment proscribes only governmental action, and does not apply to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official."); Burdeau v. McDowell, 256 U.S. 465, 475 (1921) (holding that there was no Fourth Amendment violation where "no official of the . . . government had anything to do with the wrongful seizure"). Accordingly, E.G.’s grandmother had a constitutional right to be free from an unreasonable search of her home conducted by the defense.
¶10        Against this backdrop, we must analyze whether E.G.’s own constitutional rights granted him the ability to obtain access to the home. Thus, this case directly confronts the tension between the constitutional rights of an innocent third party who had the misfortune of seeing her home become the scene of a crime and the constitutional rights of the criminal defendant charged with that crime.

B. Development of Criminal Discovery

 
¶11        "The right of discovery in criminal cases is not recognized at common law." Walker v. People, 248 P.2d 287, 302 (Colo. 1952); see also Michael Moore, Criminal Discovery, 19 Hastings L.J. 865, 865 (1968) ("It is an often-cited proposition that at common law the defendant in a criminal trial had no right to discover any of the prosecution’s case against him."). Early American courts, with some exceptions, adopted the common-law doctrine that they lacked the power, absent authorizing legislation, to order the prosecutor to provide discovery to a defendant. Moore, supra, at 866. In the ensuing years, however, many courts left the common-law doctrine behind. See id. at 867–69 (explaining that in almost all states, criminal discovery is in the discretion of the trial judge). The twentieth century saw many changes to the law of criminal pretrial disclosure. In 1963, the seminal case of Brady v. Maryland established a constitutional right to the disclosure of exculpatory information in the prosecutor’s possession. 373 U.S. 83 (1963). Around the same time, states and legislatures began to expand criminal discovery rights through statute and through the rules of criminal procedure. See, e.g., Crim. P. 16; Utah R. Crim. P. 16.
¶12        Despite, or perhaps as a result of, the wide expansion of discovery rights through statutes and court rules, Colorado remains one of the few states that has never deviated from the traditional doctrine holding that courts lack power to grant discovery outside of those statutes or rules. See Walker, 248 P.2d at 302. In Walker, a defendant had requested and was denied pretrial access to certain physical evidence specimens upon which he wished to conduct "chemical experiments." Id. This court rejected his assignment of error, explaining that the trial court properly denied his request because it had no authority to do otherwise: "[T]he doctrine of discovery is . . . a complete and utter stranger to criminal procedure, unless introduced by appropriate legislation." Id. 
¶13        Because Colorado law establishes that a trial court has no freestanding authority to grant criminal discovery beyond what is authorized by the Constitution, the rules, or by statute,[3] we must scrutinize those sources to determine whether the trial court had the ability to grant E.G. access to his grandmother’s private home. 
 
 

C. Rule 16 of the Colorado Rules of Criminal Procedure

¶14        Crim. P. 16 ensures that a defendant has access to material and information in the government’s possession or control, but it does not address a defendant’s ability to access material and information held by private third parties. It thus cannot provide a source of authority for a court to order access to a private third party’s home.
¶15        In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court first recognized that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." See also United States v. Bagley, 473 U.S. 667, 682 (1985) (holding that regardless of whether the defense makes a request, constitutional error results from government suppression of favorable evidence). Crim. P. 16 prevents the prosecution from committing such a violation. Under Crim. P. 16(I)(a)(2), the prosecutor is required to "disclose to the defense any material or information within his or her possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor." (Emphasis added.) The rule also goes further and lists many other types of material and information "within the possession or control of the prosecuting attorney" (or "other governmental personnel") that the prosecutor must "make available" to the defense. Crim. P. 16(I)(a)(1) (emphasis added).[4] However nothing in Crim. P. 16(I)(1)(a)–(c) grants the trial court authority to order access to a private home that is not subject to the court’s jurisdiction. Neither the prosecutor nor any other government personnel was in possession of E.G.’s grandmother’s house. Therefore, Crim. P. 16(I)(1)(a)–(c) did not provide the court with authority to order access to the home.
¶16        Crim. P. 16(I)(d)(1) provides generally that "the court in its discretion may, upon motion, require disclosure to the defense of relevant material and information not covered by Parts I(a), (b) and (c), upon a showing by the defense that the request is reasonable." But to "require disclosure," the court must have authority over the thing disclosed—and the court has no authority to order "disclosure" of a non-party’s home. And of course, the rule’s language requiring "disclosure" of "material or information" does not easily seem to apply to a request for access to a home. In any event, as we explained in People v. District Court, "Crim. P. 16(I)(d)(1) is not intended to afford an accused an additional opportunity to pursue material which could not be discovered under Crim. P. 16(I)(a)(1) or (a)(2)." 790 P.2d 332, 338 (Colo. 1990). Thus, Crim. P. 16(I)(d)(1) does not provide broad power to the courts to grant criminal defendants access to a non-party’s private property. Having established that Crim. P. 16 does not apply to third parties, we turn to the second primary component of a criminal defendant’s discovery rights: Crim. P. 17 and the right to compulsory process.

D. The Compulsory Process Clause of the Sixth Amendment and the Rule 17 Subpoena Power

 
¶17        Rule 17 of the Colorado Rules of Criminal Procedure provides criminal defendants with a means to vindicate their constitutional rights to compulsory process. People v. Spykstra, 234 P.3d 662, 671 (Colo. 2010). E.G. argues that the Sixth Amendment’s compulsory process clause underlies the trial court’s authority to issue an order granting a defendant access to the home of a private third party—and the court of appeals suggested the same, below. See E.G., ¶¶ 7–8, 13–15. The Sixth Amendment right to compulsory process is a trial right to compel witnesses to testify and to bring tangible evidence to court with them; it does not provide a trial court with the authority to order a non-party to allow access to her private home.
¶18        The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend VI (emphasis added). The court of appeals cited Washington v. Texas, 388 U.S. 14, 19 (1967), for the proposition that, as a part of the constitutional right to present evidence and confront witnesses, a defendant has "the right to compel material evidence from private third parties." E.G., ¶ 8. It went on to conclude that therefore, under Washington,[5] "a defendant’s right to inspect an alleged crime scene clearly implicates concepts of fundamental fairness and due process." Id. at ¶ 15. Here, the court of appeals went too far.
¶19        In Washington, the Supreme Court applied the Compulsory Process Clause of the Sixth Amendment to the states and held that "[a]n accused . . . has the right to present his own witnesses to establish a defense" because "[t]his right is a fundamental element of due process of law." 388 U.S. at 19. However, Washington does not support the notion that the Compulsory Process Clause provides a tool by which a defendant can obtain investigatory access to private property. In fact, "[a]part from serving to secure witnesses and evidence for in-court presentation, the Compulsory Process Clause . . . has never been found by the Court to guarantee access to evidence more generally." People v. Baltazar, 241 P.3d 941, 944 (Colo. 2010) (emphasis added) (citations omitted).
¶20        In Colorado, Crim. P. 17 provides a defendant with the tools of compulsory process. Crim. P. 17 provides that "in every criminal case" the defendant has the "right to compel the attendance of witnesses and the production of tangible evidence by service upon them of a subpoena to appear for examination as a witness." The rule provides that a defendant may issue a subpoena commanding a witness "to attend and give testimony" and that he "may also command the person . . . to produce . . . books, papers, documents, photographs, or other objects." Crim. P. 17(a), (c). Thus, under Crim. P. 17, a defendant may obtain limited access, through the subpoena power of the court, to tangible, material evidence and witness testimony. See Spykstra, 234 P.3d at 669. This court has long emphasized that pretrial subpoenas under Crim. P. 17(c) have a "limited scope" and may not be used as an investigatory tool. Id.; see also Crim. P. 17(c) (providing that "the court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive").
¶21        Moreover, this case does not involve a rule 17(c) subpoena. And even if it did, no such subpoena could issue under rule 17(c) for access to a private home. Crim. P. 17(c) applies explicitly to the production, in court, of "books, papers, documents, photographs, or other objects." (Emphasis added.)
¶22        Contrary to E.G.’s argument, we have never upheld a general right of criminal defendants to discovery under the Compulsory Process Clause. In Spykstra, we held that "compulsory process and due process may require pretrial access to evidence which may be material to the defense." 234 P.3d at 671. But the Spykstra court concluded that the subpoena authority under Crim. P. 17(c) provides the defense with all of the access to material possessed by third persons that the Constitution requires. Id. ("Crim. P. 17(c) strikes the balance between a defendant’s right to exculpatory evidence with the competing interests of a witness to protect personal information . . . ."); see also United States v. Pollard (In re Martin Marietta Corp.), 856 F.2d 619, 621 (4th Cir. 1988) ("Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor."). Accordingly, Crim. P. 17 does not provide authority by which a trial court can order defense access to a private home of a non-party that is not in the possession or control of the government.

E. The Due Process Clause

¶23        We now turn to the Due Process Clause. As we have explained, it is well established that "[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one." Weatherford v. Bursey, 429 U.S. 545, 559 (1977); accord Spykstra, 234 P.3d at 670; see also Brady, 373 U.S. at 87; United States v. Beasley, 576 F.2d 626, 630 (5th Cir. 1978) ("Brady is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation."). In Brady, the Court held that a defendant has a right to obtain material, exculpatory evidence from the prosecution, which "if suppressed, would deprive the defendant of a fair trial." Bagley, 473 U.S. at 675 (citing Brady, 373 U.S. at 87). But Brady and its progeny did not give defense counsel the "right to conduct his own search of the State’s files." Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987); see also United States v. Agurs, 427 U.S. 97, 109, 111 (1976) (stating that "the Constitution surely does not demand" that a prosecutor turn over "everything that might influence a jury . . . as a matter of routine practice"). Nor did those cases expand a defendant’s discovery rights to anything beyond favorable, material evidence in the possession of the government.
¶24        In Baltazar, we rejected the idea that due process requires that defendants receive expanded discovery rights. 241 P.3d at 944. We explained that the U.S. Supreme Court "has found, at most," that a defendant has "an entitlement of access to evidence and witnesses that would be both constitutionally material and favorable to the accused." Id. Similarly, in Bagley, the Court explained that a prosecutor is required "only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." 473 U.S. at 675 (footnote omitted); see also Brady, 373 U.S. at 87 ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment . . . ."). These cases stand for the proposition that a defendant has a right of "access" only to favorable evidence that is in the government’s possession or control. Bagley, 473 U.S. at 675; Brady, 373 U.S. at 87; Baltazar, 241 P.3d at 944.
¶25        The Due Process Clause does not provide a defendant with a right to use court-provided "investigative tool[s]." Baltazar, 241 P.3d at 943–44 (explaining that a defendant has no right to use Crim. P. 17 subpoenas as an investigative tool because there is "no general constitutional right to discovery in a criminal case"). There is no broad constitutional right of a defendant to access the court’s powers to conduct his own investigation. "The United States Supreme Court has implied as much both by the limitations it has imputed to Rule 17(c) and by its due process, access-to-evidence jurisprudence." Id. at 944. Accordingly, due process does not provide a mooring upon which we may hitch E.G.’s proposed discovery right.
¶26        E.G. argues that, under People v. Chard, 808 P.2d 351, 353–54 (Colo. 1991), a court has authority to intrude on the constitutional rights of non-parties in order to vindicate a defendant’s right to present a defense. In that case, this court adopted the position that a trial court has the discretion to order a sexual abuse victim to submit to an involuntary physical or psychological examination. Chard, 808 P.2d at 356. The Chard court directed trial courts to exercise their discretion to order such an examination by first determining whether the defendant has a "compelling need" for the examination, and then weighing the "‘possible emotional trauma, embarrassment or intimidation to the complainant against the likelihood of the examination producing material, as distinguished from speculative, evidence.’" Id. (quoting People v. Estorga, 612 P.2d 520, 523 (Colo. 1980)). Strangely, though it acknowledged that "discovery in criminal cases was unknown to the common law," and that the Colorado Rules of Criminal Procedure do not provide for compelled physical examinations of victims, id. at 354–55, the Chard court neglected to follow—or even cite—controlling Colorado precedent, which established that "the doctrine of discovery is . . . a complete and utter stranger to criminal procedure, unless introduced by appropriate legislation," Walker, 248 P.2d at 302. See Chard, 808 P.2d 351.
¶27        Though it ostensibly adopted a rule giving trial courts the discretion to order a type of criminal discovery unauthorized by rule or statute—namely, physical and psychological examinations of victims—the Chard court nevertheless concluded that the trial court properly denied the defendant’s motion for such an examination. Id. at 352. More importantly, Chard involved a question of trial court authority to order physical and psychological examinations of victims in sexual assault cases. Id. at 354–56. We therefore conclude that Chard is distinguishable from the instant case. Additionally, neither of the parties here, nor in the related case of People v. Chavez, 2016 CO 20, have asked us to overrule Chard. "If a case ever comes before us which demonstrates that the rule in the [Chard] case has worked injustice, or prevented justice, it will be time enough to consider alteration or modification of that rule." Wolf v. People, 187 P.2d 926, 928 (Colo. 1947). In other words, "we need not consider today whether our ruling in [Chard] continues to apply. . . because this issue is not presented by the case at bar." Clementi v. Nationwide Mut. Fire Ins. Co., 16 P.3d 223, 228 n.5 (Colo. 2001); see also Marez v. Dairyland Ins. Co., 638 P.2d 286, 291 (Colo. 1981) ("[W]ere we to attempt to adopt a new rule of law . . . we would be formulating an abstract rule in a factual vacuum. Absent a factual context which compels, in the interests of justice, a departure from our present long established rule and the adoption of a new rule based on different considerations, it is jurisprudentially sound to leave the matter to another day, or to the wisdom of the general assembly . . . ."), overruled on other grounds by Friedland v. Travelers Indem. Co., 105 P.3d 639, 645 (Colo. 2005). Accordingly, we conclude that due process does not provide E.G. with the discovery tools he requested, and the court lacked authority to grant him access to his grandmother’s home.

F. The Confrontation Clause

¶28        We note finally that this case does not present a Confrontation Clause issue. Under the Sixth Amendment, a criminal defendant has the right "to be confronted with the witnesses against him." See generally Crawford v. Washington, 541 U.S. 36, 42 (2004). However, "the right to confrontation is a trial right; it is not ‘a constitutionally compelled rule of pretrial discovery.’" Spykstra, 234 P.3d at 670 (quoting Ritchie, 480 U.S. at 52 (plurality opinion)). For this reason, the court of appeals’ reliance on Chambers v. Mississippi, 410 U.S. 284, 294 (1973), was misplaced. See E.G., ¶ 15 (citing Chambers for the proposition that "a defendant’s right to inspect an alleged crime scene clearly implicates concepts of fundamental fairness and due process"). In Chambers, the defendant had been prevented from cross-examining a witness at trial. 410 U.S. at 291. The Court held that this was error because the right to cross-examine a witness is "implicit in the constitutional right of confrontation." Id. at 295.
¶29        In this case, E.G. was not denied the right to cross-examine an adverse witness at trial. Moreover, it is well established that "the Confrontation Clause does not guarantee ‘access to every possible source of information relevant to cross-examination.’" Spykstra, 234 P.3d at 670–71 (quoting Dill v. People, 927 P.2d 1315, 1322 (Colo. 1996)). "The ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." Ritchie, 480 U.S. at 53. Because the access sought by E.G. was unrelated to the trial right to confront witnesses, the Confrontation Clause does not apply here.

IV. Conclusion

 
¶30        In sum, neither a criminal defendant, nor anyone else, including the prosecuting attorney, has a constitutional right to force a third party to open her private home for an investigation. Weatherford, 429 U.S. at 559; Spykstra, 234 P.3d at 670. Under the Constitution and our Rules of Criminal Procedure, a defendant is entitled to receive exculpatory evidence in the possession of the prosecutor and other government entities; he must have the opportunity to view and challenge the prosecutor’s evidence and confront the witnesses against him; and he may obtain evidence and compel his own witnesses to testify pursuant to Crim. P. 17. But a defendant may not use the power of the court to transgress the constitutional rights of private citizens in order to build his defense.
¶31        Under the circumstances presented here, neither the United States Constitution, the Colorado Rules of Criminal Procedure, nor any statute provides the trial court with authority[6] to grant E.G. access to his grandmother’s private home without her consent. See State ex rel. Beach v. Norblad, 781 P.2d 349, 350 (Or. 1989) (holding that "Mrs. Beach is not a party to the criminal case. Absent party status, counsel has not identified any other basis (and we know of none) under which the defendant trial judge could at this stage of the proceedings issue such an order to Mrs. Beach. She is under no obligation to obey an order that the defendant trial judge lacked authority to issue." (citation omitted)). In the absence of a due process right—or any other right—to access a third-party home, the trial court had no authority to issue such an order and E.G.’s motion was properly denied.
¶32        Accordingly, we hold that the trial court indeed lacked the authority to grant defense counsel access to the private home of a third party. Because the court of appeals upheld the trial court’s denial of the motion for access, we hereby affirm its judgment on alternate grounds.

[1] Specifically, we granted certiorari to review the following issues:
1. Whether Colorado district courts have the discretionary authority to grant a defendant’s request for access to a crime scene when the crime scene is a non-party’s residence and where the non-party property owner has not been given prior notice of the defendant’s request and an opportunity to be heard on that request.
2. If Colorado district courts have authority to grant access to a non-party’s residence, whether there should be a specific showing that such access is essential to the defense before it is granted.
[2] Prior to filing the motion, defense counsel’s investigator contacted the victims’ grandmother and requested access to the home, but she refused.
 
[3] In Walker v. People, despite stating in no uncertain terms that criminal discovery is "complete[ly] and utter[ly]" a creature of statute, we nevertheless noted that "if it be recognized that in rare and extreme instances the court might, under its inherent power and in the interest of justice, be justified in requiring the prosecution to permit inspection of exhibits in the hands of officers, such power should be exercised with great caution." 248 P.2d 287, 302 (Colo. 1952) (emphasis added). Since that case was decided in 1952, Crim. P. 16 was created, and now provides our courts with discretion to order the prosecutor to disclose "relevant material and information" in the prosecutor’s possession that is not otherwise covered by the rule—so the statement is largely out of date. See Crim. P. 16(I)(d)(1). To the extent that this comment suggested that Colorado courts have a residual "inherent authority" in certain circumstances to order access to evidence not found in rules or statute, we reserve that question for another day.
[4] Crim. P. 16(I)(c) provides that information "which would be discoverable if in the possession or control of the prosecuting attorney" but which is in fact in the possession of "other government personnel" must be made available to the defense, either by the prosecuting attorney’s "diligent good faith efforts" or through the court’s issuance of "subpoenas or orders" if "such material or other governmental personnel are subject to the jurisdiction of the court."
[5] The court also cited Chambers v. Mississippi, 410 U.S. 284 (1973)—but that case dealt with the Confrontation Clause. People in the Interest of E.G., 2015 COA 18, ¶ 15, __ P.3d __. For analysis of that issue see infra ¶¶ 28–29.
 
JUSTICE GABRIEL, concurring in the judgment.
¶33        In my view, in an appropriate case, a defendant’s due process right to a fair trial requires that he or she be given the right to access a crime scene that is under a third party’s control. I further believe that in such a case, the trial court is empowered to order access to the crime scene through its inherent right to enforce its jurisdiction. In this case, however, I do not believe that E.G. has established what I believe should be the requisite showing to obtain access to a crime scene under a third party’s control. Accordingly, I generally agree with the court of appeals division’s thoughtful analysis in this case, and I would affirm its judgment on the same grounds. I therefore respectfully concur in this court’s judgment only. 

I. Facts and Procedural History

¶34        The majority has set forth most of the pertinent facts. I would add, however, that although E.G.’s grandmother had allowed the state unfettered access to the crime scene in her home and had initially agreed to give E.G.’s representatives access, she ultimately changed her mind and refused to allow E.G.’s counsel and counsel’s investigator access to the home to view and photograph the crime scene.
¶35        In my view, this kind of unequal access to the evidence in a case is pertinent to an analysis of whether a defendant was afforded his or her due process right to a fair trial.

II. Analysis
 
¶36        Although I agree with much of the majority’s analysis, I part company with my colleagues regarding their discussions of a defendant’s due process rights and of a trial court’s authority to allow a defendant access to a crime scene that is under a third party’s control. I address these issues in turn.

A. Due Process Right to Access a Crime Scene
 
¶37        The Due Process Clauses of the United States and Colorado constitutions guarantee every criminal defendant the right to a fair trial. Morrison v. People, 19 P.3d 668, 672 (Colo. 2000); see also U.S. Const. amends. V, VI, XIV (setting forth the rights to due process and the rights of an accused in a criminal prosecution); Colo. Const. art. II, §§ 16, 25 (same). In particular, "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State’s accusations." Chambers v. Mississippi, 410 U.S. 284, 294 (1973).
¶38        In light of the foregoing principles, this court has recognized that due process may require pretrial access to evidence that may be material to a defendant’s defense. See People v. Spykstra, 234 P.3d 662, 671 (Colo. 2010); see also Commonwealth v. Matis, 915 N.E.2d 212, 213 (Mass. 2006) (noting a criminal defendant’s unquestioned right under the Sixth Amendment and the Massachusetts Declaration of Rights to obtain relevant evidence bearing on his or her guilt or innocence or that otherwise helps his or her defense). Indeed, we have extended such a right of access to allow the involuntary physical examination of a child sexual abuse victim, upon a defendant’s showing of a compelling need for such an examination. See People v. Chard, 808 P.2d 351, 356 (Colo. 1991) (adopting the view of a majority of other jurisdictions and holding that a trial court may exercise its discretion to order an involuntary physical examination of a child sexual abuse victim when a defendant demonstrates a compelling need or reason for the examination, and further providing that in exercising this discretion, the court must balance the possible emotional trauma, embarrassment, or intimidation to the complainant against the likelihood that the examination will produce material evidence).
¶39         In recognizing this right of access to material evidence, our prior decisions have been in accord with the decisions of other jurisdictions that have, subject to certain limitations, allowed a defendant access to a crime scene that is under a third party’s control.
¶40        For example, in Henshaw v. Commonwealth, 451 S.E.2d 415, 419 (Va. Ct. App. 1994), the Virginia Court of Appeals relied on the due process rights set forth in the Virginia Constitution to hold that in an appropriate case, a criminal defendant has the right "to view, photograph, and take measurements of the crime scene."
¶41         Similarly, in Matis, 915 N.E.2d at 213, the Massachusetts Supreme Judicial Court opined that the trial court had the authority to order access to a crime scene in a private residence, subject to certain conditions.
¶42        And most recently, the New Jersey Supreme Court held that a trial court correctly concluded that upon a proper showing, a defendant was entitled to inspect a crime scene in the alleged victim’s home. See State in Int. of A.B., 99 A.3d 782, 793 (N.J. 2014). In reaching this conclusion, the court observed that New Jersey courts do not countenance "trial by surprise." Id. at 789. The court further opined, "Visiting the scene of the crime can be critical in preparing a defense." Id. at 790; see also State v. Brown, 293 S.E.2d 569, 578 (N.C. 1982) (concluding in a case in which police had control of the crime scene, which was an apartment, that it was a denial of fundamental fairness and due process for the defendant to be denied the limited inspection of the crime scene that he had requested, particularly given that the state had been given access to the scene and had relied heavily on information gained therefrom in prosecuting the defendant).
¶43        Those courts that have recognized a defendant’s due process right to access a crime scene that is under a third party’s control, however, have further opined that such access is not unlimited. Rather, a court must consider the third party’s significant privacy interest in his or her home. See, e.g., Bullen v. Superior Court, 251 Cal. Rptr. 32, 33 (Cal. Ct. App. 1988) (recognizing a homeowner’s "fundamental right to privacy free from judicially mandated intrusion into her home"); Matis, 915 N.E.2d at 215 (recognizing the "legitimate privacy interests" involved); A.B., 99 A.3d at 785 (recognizing the right of a purported victim and her family to privacy); Henshaw, 451 S.E.2d at 420 (noting the private citizen’s constitutional right to privacy); see also Chard, 808 P.2d at 355–56 (noting the significant interests of a child sexual abuse victim who is ordered to submit to an involuntary physical examination).
¶44        Thus, the Massachusetts Supreme Judicial Court has concluded that before a court will allow a defendant access to a crime scene in a private residence, the owner of the residence and the prosecution must be given both notice of the defendant’s motion for pretrial access and the opportunity to be heard. See Matis, 915 N.E.2d at 214–15.
¶45        Likewise, jurisdictions that have recognized a defendant’s right of access to a crime scene that is under a third party’s control have required courts considering a request for access to balance the defendant’s need for such access against the homeowner’s privacy interests. See, e.g., Bullen, 251 Cal. Rptr. at 34 (requiring a defendant to demonstrate sufficient plausible justification and good cause for the intrusion and concluding that the defendant’s "conclusional" showing in the case before it was inadequate); Matis, 915 N.E.2d at 215 (noting that a court order allowing access to a crime scene in a private residence "must be carefully tailored to protect the legitimate privacy interests involved"); A.B., 99 A.3d at 785 ("The right of the accused to a fair trial, and the right of a purported victim and her family to privacy must be balanced."); Henshaw, 451 S.E.2d at 419–20 (requiring a weighing of the defendant’s due process rights against the homeowner’s privacy interests).
¶46        For example, in Henshaw, 451 S.E.2d at 419–20, the court held that due process gave the defendant a right of access to a crime scene, provided first that the defendant established a substantial basis for claiming that the proposed inspection and observation would produce evidence that was relevant and material to the defense or that would allow the defendant meaningfully to defend against the pending charges. If the defendant made such a showing, then he or she would be entitled to access the crime scene, subject to such reasonable limitations and restrictions as the court deemed necessary, unless the private citizen’s constitutional right to privacy outweighed the defendant’s right to view or inspect the premises. Id. at 420. A homeowner’s mere desire that the defendant or his or her representatives not be allowed access, however, would not alone be sufficient to overcome a showing of need by the defendant. Id. 
 
 
¶47        In my view, the test articulated by the Henshaw court strikes the correct balance between the defendant’s due process rights and the homeowner’s privacy rights.
¶48        Accordingly, I would conclude that E.G. had a due process right to access the crime scene in this case, subject to three conditions. First, E.G. had to give notice to E.G.’s grandmother and to the People of his request for access, and both the grandmother and the People had to be given an opportunity to be heard with respect to E.G.’s request. Second, E.G. had to establish (1) a substantial basis for believing that the proposed inspection and observation would produce evidence that was relevant and material to his defense or that would allow him meaningfully to defend against the pending charges and (2) that his right of access was not outweighed by the grandmother’s and victims’ constitutional rights to privacy. Third, any right of access would be subject to such reasonable limitations and restrictions as the trial court may deem necessary, including time limits for the inspection, restrictions as to where within the premises the defense team may investigate, and limits as to who may participate in the inspection (e.g., defense counsel and an expert or investigator but not the defendant himself or herself).
¶49        I am not persuaded otherwise by the majority’s implication that allowing a defendant access to a crime scene that is under a third party’s control amounts to a per se unreasonable search within the meaning of the Fourth Amendment and is thus precluded in every case, regardless of the circumstances. I have seen no case concluding that in circumstances like those present here, a third party’s privacy right automatically trumps a defendant’s due process right to access a crime scene that is under the third party’s control. Nor has the majority cited such a case.
¶50        Moreover, I cannot agree to a rule that would sweep so broadly as to preclude, in every case, access to a crime scene that is under a third party’s control, regardless of the extent to which the parties have had disparate access to the evidence and the prosecution has taken advantage of such unequal access. In my view, in an appropriate case, as for example when the government is given unrestricted access and relies extensively at trial on evidence derived therefrom, due process and fundamental fairness require that the defendant also be given access. See Brown, 293 S.E.2d at 578 (concluding that it was a denial of fundamental fairness and due process for the defendant to be denied the limited inspection of the premises of the crime scene that he had requested, particularly when the state had been given access to the scene and had relied heavily on information gained therefrom in prosecuting the defendant).
¶51        Nor am I persuaded by the majority’s suggestions that a defendant’s due process rights are (1) limited to the right to access only material and favorable evidence in the government’s possession or control and (2) adequately protected by the fact that the prosecution is required to disclose material, exculpatory information in its possession. See maj. op. at ¶¶ 23–25. In inspecting a crime scene, the state and a defendant generally have opposite goals. The state is attempting to solve a crime and obtain a conviction. The defendant, in contrast, is trying to uncover evidence that will help him or her avoid being convicted of a crime. That is simply the nature of our adversary system, and to allow one party access to substantial evidence while denying the other party corresponding access undermines the proper functioning of that system.
¶52        For these reasons, I would conclude that in an appropriate case, a defendant has a due process right to access a crime scene that is under a third party’s control.

B. Courts’ Authority to Order Access to a Crime Scene
 
¶53        The question thus becomes whether a trial court has the authority to order such access. Unlike the majority, I believe that it does.
¶54        In Pena v. District Court, 681 P.2d 953, 956 (Colo. 1984) (quoting Jim R. Carrigan, Inherent Powers and Finance, 7 Trial 22 (Nov.-Dec. 1971)), we stated:

The inherent powers which courts possess consist of: "[A]ll powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective. These powers are inherent in the sense that they exist because the court exists; the court is, therefore it has the powers reasonably required to act as an efficient court."
 
See also § 13-1-115, C.R.S. (2015) ("The courts have power to issue all writs necessary and proper to the complete exercise of the power conferred on them by the constitution and laws of this state.").
¶55        Applying similar principles on facts analogous to those present here, the New Jersey Supreme Court recently observed that courts have the inherent power to order discovery when justice so requires. A.B., 99 A.3d at 789. The court further stated, "We must be mindful that the purpose of pretrial discovery is to ensure a fair trial. A criminal trial where the defendant does not have ‘access to the raw materials integral to the building of an effective defense’ is fundamentally unfair." Id. (quoting Ake v. Oklahoma, 470 U.S. 68, 77 (1985)). And as noted above, the court recognized that visiting a crime scene can be "critical" in preparing a defense. Id. 
¶56        I am persuaded by this reasoning and would thus recognize a trial court’s inherent authority to allow access to a crime scene that is under a third party’s control, if the defendant satisfies the burden set forth above. Indeed, it would be difficult to square a contrary conclusion with our longstanding case law authorizing a trial court to permit the jury in a criminal case to view a crime scene. See People v. Favors, 556 P.2d 72, 75–76 (Colo. 1976); cf. C.R.C.P. 47(k) (authorizing the trial court in a civil case to order that a jury be permitted to examine "any property or place," if the court determines that it is proper for the jury to do so). If the court is authorized to allow jurors to access a crime scene, surely the court has the authority to allow the defense team to do so.

C. Application

¶57        Having concluded that E.G. has a due process right to access a crime scene that is under a third party’s control, pending the proper showing, and that the court has the authority to order such access, on the conditions set forth above, the question remains whether E.G. has satisfied his above-defined burden here. Like the division below, see People in Int. of E.G., 2015 COA 18, ¶¶ 19–21, __ P.3d __, I conclude that he has not.
¶58        Specifically, E.G. did not establish a substantial basis for believing that the proposed inspection and observation would produce evidence that was relevant and material to his defense or that would allow him meaningfully to defend against the pending charges. He did not explain why the evidence sought was necessary to his defense. Nor did he explain why viewing and photographing the crime scene was necessary to his defense. To the contrary, E.G.’s request was general and conclusory.
¶59        Nor am I persuaded by E.G.’s argument that had he been given access to the crime scene, he could have explored sound dynamics in the house, examined the specific layout of the rooms in relation to the basement, and potentially impeached witnesses’ testimony at trial using that evidence. Beside the fact that this argument is in large measure speculative, as the division observed, E.G. did not present these justifications to the trial court, and an appellate court will not consider such arguments for the first time on appeal. Id. at ¶ 20.
¶60        In these circumstances, I cannot say that E.G. has made a showing of need for access sufficient to outweigh the grandmother’s and victims’ constitutional rights to privacy.

III. Conclusion
 
¶61        For these reasons, I would affirm the division’s decision on the grounds on which it relied. Accordingly, I respectfully concur in the judgment only.