524 P.3d 1178
In re the PEOPLE of the State of Colorado, Plaintiff,
v.James Lee JUSTICE, Defendant.
Supreme Court Case Nos. 22SA347 & 22SA348 Supreme Court of Colorado.
February 27, 2023
Attorneys for Plaintiff: J.E. Chostner, District Attorney, Tenth Judicial District, G. James Poland, Chief Trial Deputy District Attorney, David Dingess, Deputy District Attorney, Pueblo, Colorado, Megan Rasband, Special Deputy District Attorney, Senior Assistant Attorney General, Denver, Colorado
Attorney for Defendant in 22SA347: Michael S. Emmons, Pueblo, Colorado
Attorneys for Defendant in 22SA348: Megan A. Ring, Public Defender, Ian J. King, Deputy Public Defender, Pueblo, Colorado
Attorneys for Respondent Pueblo County District Court: Philip J. Weiser, Attorney General, Peter G. Baumann, Assistant Attorney General, Denver, Colorado
En Banc
JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE HART, and JUSTICE BERKENKOTTER joined.
JUSTICE SAMOUR delivered the Opinion of the Court.
¶1 No two ways about it—mediation is one of the most effective tools for conflict resolution in American jurisprudence. But may a state trial court in Colorado properly order mediation in a criminal case? In a word, no.
¶2 The defendant, James Lee Justice, stands charged with multiple offenses in four felony cases. The People extended him a global plea bargain offer, but he rejected it. Unhappy that the People would not sweeten the offer, Justice filed a motion asking the district court to compel mediation. The court granted the motion and ordered mediation over the People's objection. As part of its order, the court required good-faith participation and threatened to impose sanctions for lack of compliance. The People then brought petitions invoking our original jurisdiction in two of the cases, and we issued rules to show cause.
¶3 Because the district court lacked the authority to require the parties to mediate in these criminal cases, and because the mediation order arguably involved the court in the plea bargaining process, we conclude that the court erred. Therefore, notwithstanding the court's good intentions, we make absolute the rules to show cause.
I. Facts and Procedural History
¶4 The People have brought four felony cases against Justice. He faces numerous charges, including multiple counts of each of the following: attempted first degree murder, first degree assault, attempted first degree assault, and second degree assault. In addition, he is charged with one count of each of the following: use of explosives or incendiary devices, possession of an explosive or an incendiary device, misdemeanor assault, and resisting arrest. While Justice was on bond and contemplating the People's global plea offer related to the first three cases, he was arrested on the fourth case. After charges were filed in the fourth case, the People conveyed a modified (and less favorable) global plea offer. It appears that, like its predecessor, this offer included a recommendation concerning the charges filed and/or the applicable sentences in exchange for Justice's guilty plea to one or more offenses. Justice rejected the modified offer. Thereafter, his family hired private counsel to represent him in one of the cases. A deputy public defender remained counsel of record in the other three cases.
¶5 Because the People refused to tender a more lenient global offer, Justice's private counsel filed a motion seeking compulsory mediation in all four cases. He argued that there were "a number of serious charges," some of which carried mandatory prison sentences, and that "[m]ediation would create the opportunity for all parties to have a frank exchange regarding their various position[s] and allow an objective [person] to give input on possible ways those positions might be reconciled." The deputy public defender involved in Justice's representation supported the request for mediation.
¶6 During a hearing held the next day, the People objected to the motion. They asserted that whether to participate in mediation "should be left to the parties." The court disagreed, however, and orally ordered mediation. It explained that it had the authority to do so, and that, given the number of cases pending and jury trials set, it was appropriate "to at least attempt" mediation. The court clarified that, while it was not requiring the People to extend an offer, it did expect them to make "a good faith attempt to see if there's some way to work these cases out." As part of its ruling, the court shared with the parties the name of the senior judge it had selected to act as mediator.
¶7 About a week later, the People filed a motion to vacate the mediation order. They contended that the order violated the separation of powers doctrine enshrined in article III of the Colorado Constitution. More specifically, the People maintained that it was improper for the court, which is part of the judicial branch, to interfere with their office, which is part of the executive branch. The mediation order, protested the People, encroached on the executive branch's turf. Additionally, the People argued that the court had no authority to order them to participate in "mediation plea discussions." Rather, urged the People, under Colorado law, they "may," but are not required to, "engage in plea discussions for the purpose of reaching a plea agreement." § 16-7-301(1), C.R.S. (2022).
¶8 Justice countered that the mediation order rested on firm ground because it neither mandated an offer nor dictated the parameters of any offer the People might extend. Instead, said Justice, the order was simply procedural, and "[s]ince the results of any particular mediation" would have to be approved by both sides, "no one's discretion [was] interfered with, including the prosecutor's." Continuing, Justice pointed out that the People's motion failed to cite to any authority directly on point while ignoring that "mediations have been ordered in criminal cases for decades in Colorado."
¶9 The court denied the motion to vacate in a written order. It found inapposite a case cited by the People, which dealt with an order requiring the prosecution to administer a polygraph. In contrast to the order challenged in that case, observed the court, the mediation order here was not "directing [the] investigation or prosecution" of a case. The court then doubled down on its rationale for ordering mediation—the possibility that the parties could agree on a plea bargain, thereby saving extensive resources and time:
The Court notes in this matter and the companion case[s], there will be significant judicial resources used in trying the matters, as well as the time of community members to serve as jurors. Additionally, the Court is aware of the staffing concerns of the District Attorney's office. Finally, it is the Defendant that is seeking mediation, [and] while not any guarantee of settlement, it at least indicates a willingness of the Defendant to consider pleading guilty.
¶10 Although acknowledging that there was "no guarantee of success," the court indicated that it expected the parties "to mediate in good faith." In the court's view, good-faith mediation was "worth a morning or afternoon of the time of the parties." The court then instructed the parties to promptly schedule mediation.
¶11 Shortly after the court issued its written order, the mediator sent an email to all counsel (with a copy to the court's judicial assistant) to confirm the date and time of the mediation session. In the same email, he asked that each party submit "a confidential settlement statement," along with:
[W]hatever you think helpful to an outsider, including any history of prior negotiations in th[ese] case[s], what you perceive to be your strengths and weaknesses, as well as what you perceive to be the strengths or weaknesses of the other side (one may answer the other). Any synopsis of facts that you deem appropriate is also appreciated. ... In the past, I have been given a disc of discovery; that can also be provided.
¶12 Before the scheduled mediation, the People filed two C.A.R. 21 petitions invoking our court's original jurisdiction.1 Hours later, the district court issued a mediation referral order in all four cases, which it made effective as of the date of its written order (approximately a month earlier).
¶13 The district court again found that these cases were "appropriate for mediation." It then identified for the first time the basis of its purported authority to order mediation: section 13-22-311, C.R.S. (2022), which is part of the Dispute Resolution Act.
¶14 The court reiterated that it was "not in any way directly or indirectly" requiring the parties to reach a plea agreement. Rather, stated the court, it was simply requiring the parties to participate in mediation, which it characterized as "a method by which the parties themselves help to resolve their issues" relating to these cases. The court then announced that mediation would be conducted in a vacant courtroom or conference room at the courthouse, with all expenses paid by the judicial district.
¶15 Of particular relevance to the People's concerns here, and consistent with the mediator's email, the court directed each party to "prepare and provide to the mediator ... a confidential settlement statement" and documents counsel believed "may be useful for the mediator to understand [the] strengths and weaknesses of either party." Further, counsel were prohibited from changing or cancelling the mediation session without a finding of "good cause" by the court. And the court reminded the parties that the referral order was a court order and that they were subject to sanctions for failing to comply with it.
¶16 We issued a rule to show cause in response to each C.A.R. 21 petition filed by the People. We explain next why we are exercising our original jurisdiction in these two cases.
II. Original Jurisdiction ¶17 C.A.R. 21(a)(1) gives our court "sole discretion to exercise our original jurisdiction" under the Colorado Constitution. People v. Cortes-Gonzalez, 2022 CO 14, ¶ 21, 506 P.3d 835, 842. But that discretion isn't unfettered. Relief under C.A.R. 21(a)(1) "is extraordinary in nature" and "will be granted only when no other adequate remedy ... is available." C.A.R. 21(a)(1). Consequently, in the past, we have considered such relief appropriate "when an appellate remedy would be inadequate, when a party may otherwise suffer irreparable harm, [or] when a petition raises ‘issues of significant public importance.’ " People v. Kilgore, 2020 CO 6, ¶ 8, 455 P.3d 746, 748 (citations omitted) (quoting Wesp v. Everson, 33 P.3d 191, 194 (Colo. 2001) ). ¶18 The People argue that they have no adequate appellate remedy and that they have raised a novel issue of significant public importance. We agree and therefore conclude that these are appropriate cases to exercise our original jurisdiction.
¶19 First, the People are without any adequate appellate remedy. A direct appeal affords the People no avenue to seek redress because they have made clear that they do not wish to engage in mediation. Requiring the People to raise the issue on direct appeal, after the proverbial ship has sailed and compulsory mediation has occurred, would provide no relief.
¶20 Second, the People's petition raises a question of first impression that has significant public importance. Our decision has the potential to impact many criminal cases throughout the state. Multiple judicial districts appear to have ordered mediation in criminal cases in the past. By private defense counsel's own admission, he has participated in court-ordered mediation in criminal cases in two other judicial districts (the Third and Sixteenth Judicial Districts). And, in 2008, our court denied a C.A.R. 21 petition that presented the question of whether a district court in the Fourth Judicial District had properly ordered mediation in a criminal case. See People v. Rangel (Colo. No. 08SA256, Aug. 1, 2008) (unpublished order). So, including the two cases before us, which are from the Tenth Judicial District, the People are objecting to a past or present practice in as many as four judicial districts. And neither our court nor the court of appeals has ever resolved this issue. We believe that the time has come for us to speak on it.
III. Analysis
¶21 We begin by setting forth the governing standard of review. We then address whether the district court had the authority to order the parties to participate in mediation in this criminal case. Because we conclude that it did not, and because we also conclude that the mediation order2 arguably involved the court in the plea bargaining process, we make absolute the rules to show cause. Given this resolution, we need not, and thus do not, decide whether the court violated the separation of powers doctrine.
A. Governing Standard of Review ¶22 Whether the district court properly required the parties to participate in mediation is a question of law. See Kilgore, ¶ 13, 455 P.3d at 749 (explaining that whether the district court had properly ordered defense exhibits disclosed before trial was a legal question). We review legal questions de novo. Id.
B. The District Court Lacked the Authority to Order Mediation
¶23 The district court and the parties agree, as do we, that section 16-7-301, which is titled "Propriety of plea discussions and plea agreements," applies in criminal cases. Section 16-7-301(1) provides that the People "may engage in plea discussions for the purpose of reaching a plea agreement" if "it appears that the effective administration of criminal justice will thereby be served." ¶24 That the People are vested with the discretion to engage in plea discussions necessarily means that they are vested with the discretion to refrain from engaging in plea discussions. Indeed, there are situations in which the People may decide, in their discretion, that they have to abstain from engaging in such discussions—i.e., where, in their estimation, plea discussions would not serve the effective administration of criminal justice. Id. But either way, the decision to have or forgo plea discussions is the People's and the People's alone. It follows that a trial court can neither force the People to engage in plea discussions nor prevent the People from engaging in plea discussions. ¶25 Further, when the People do decide to participate in plea discussions, they have the discretion to determine what type of offer to make. § 16-7-301(2). The People have multiple options available to them in formulating an offer based on the circumstances present. See § 16-7-301(2)(a)–(f). As pertinent here, the People may decide to make a favorable recommendation concerning the charges filed and/or the applicable sentences in exchange for the defendant's guilty plea to one or more offenses. § 16-7-301(2)(a)–(b). Of course, the defendant may reject any offer made—it's the defendant's absolute prerogative to do so. What the defendant cannot do is enlist the court's assistance via an order for mediation to try to force the People to extend an offer or to consider a more favorable offer. ¶26 When the People extend an offer in a case, the court has no role in the process. See generally § 16-7-301(2). That is, a court has no more authority to influence an offer extended by the People than it does to compel the People to engage in plea discussions in the first place. Both are matters within the People's sole discretion. § 16-7-301(1) – (2). ¶27 Significantly, a neighboring statutory provision, section 16-7-302(1), C.R.S. (2022), makes explicit that which is clearly implicit in sections 16-7-301(1) – (2) : "The trial judge shall not participate in plea discussions."3 The words "shall not" convey a "mandatory command." Pearson v. Dist. Ct., 924 P.2d 512, 517 (Colo. 1996). ¶28 The impetus for the proscription in section 16-7-302(1) is clear: Judicial participation in the plea bargaining process "undermines the fundamental fairness of the proceedings." Crumb v. People, 230 P.3d 726, 731 (Colo. 2010). "When a judge becomes involved in plea discussions, the judge is no longer a judicial officer or a neutral arbiter." Id. Such involvement is problematic because the judge "plays an essential role to ensure the impartial and objective administration of criminal justice." Id.
¶29 Consistent with sections 16-7-301(1) – (2) and 16-7-302(1), we have recognized that "the People, not the court, may offer the defendant the opportunity to plead guilty" to an added charge "as part of a plea agreement." People v. Mazzarelli, 2019 CO 71, ¶ 31, 444 P.3d 301, 309. Equally on point, the court of appeals has observed that the pursuit of "plea negotiations in criminal cases is committed to the executive authority of the prosecution." People v. Lewis, 671 P.2d 985, 988 (Colo. App. 1983) (relying on § 16-7-301(1) ); see also Crumb, 230 P.3d at 730 ("Both the Colorado Rules of Criminal Procedure and the Colorado Revised Statutes provide that ‘the trial judge shall not participate in plea discussions.’ ") (quoting § 16-7-302(1) ; Crim. P. 11(f)(4) ).4 ¶30 The district court and Justice, however, rely on section 13-22-311(1) of the Dispute Resolution Act. That reliance is misplaced.
¶31 First, although section 13-22-311, titled "Court referral to mediation—duties of mediator," states at the beginning of subsection (1) that "[a]ny court of record may, in its discretion, refer any case for mediation services or dispute resolution programs," this statute is part of Title 13 and has no application in criminal cases. The "Colorado Code of Criminal Procedure" resides in Title 16 of the Colorado Revised Statutes. See § 16-1-101(1), C.R.S. (2022). The "Colorado Criminal Code" is domiciled in Title 18 of the Colorado Revised Statutes. See § 18-1-101(1), C.R.S. (2022). And our "Vehicles and Traffic" laws are parked in Title 42 of the Colorado Revised Statutes. There is no provision regarding dispute resolution programs, let alone mediation, in Titles 16, 18, and 42.
¶32 Second, the contents that follow the first sentence of section 13-22-311(1) bolster our conclusion. For example, subsection (1) carves out an exception: The court is prohibited from requiring mediation where one of the parties objects to mediation and claims to have "been the victim of physical or psychological abuse by the other party." § 13-22-311(1). This exception makes sense in civil cases; not so much in criminal cases. In many criminal cases, the named victim alleges to have suffered physical or mental abuse at the hands of the defendant. But the named victim isn't a party in any criminal case; the People and the defendant are the parties in criminal cases. And because the People are never "the victim of physical or psychological abuse by the other party," this exception would have no application in criminal cases.
¶33 There's more. Subsection (1) allows the court to "exempt from referral any case in which a party files ... a motion objecting to mediation and demonstrating compelling reasons why mediation should not be ordered." Id. The only example of a compelling reason provided is "that the costs of mediation would be higher than the requested relief and previous attempts to resolve the issues were not successful." Id. Applying this reason in the criminal arena is illogical, as the requested relief in a criminal case is never money. ¶34 Third, and perhaps most concerning, the approach suggested by the district court and Justice would set section 13-22-311(1), on the one hand, and sections 16-7-301(1) – (2) and 16-7-302(1), on the other, on a collision course. As we pointed out earlier, sections 16-7-301(1) – (2) and 16-7-302(1) grant the People sole discretion to determine whether to have plea discussions, and, when they decide to have such discussions, to determine what offer to tender to the defendant. To hold now that section 13-22-311(1) authorizes trial courts to order mediation and to thereby require the People to have plea discussions or to consider a different offer would directly contravene sections 16-7-301(1) – (2) and 16-7-302(1). This we may not do. We must strive to construe statutes harmoniously, "so as to avoid any conflict between them." Loza v. State Farm Mut. Auto. Ins. Co., 971 P.2d 251, 252 (Colo. App. 1998) ; see also A.M. v. A.C., 2013 CO 16, ¶ 8, 296 P.3d 1026, 1030 ("We favor interpretations that produce a harmonious reading of the statutory scheme and eschew constructions that create inconsistency."). ¶35 Here, the district court erred in relying on section 13-22-311(1) to order mediation. For the reasons we have articulated, section 13-22-311(1) has no application in this criminal case. More importantly, the mediation order violated sections 16-7-301(1) – (2) and 16-7-302(1). True, the court was clear that it was not requiring the People to make an offer. But that's beside the point. The court was devoid of authority to order the People to engage in plea discussions in the first place. The mediation order did just that: It required the People to engage in plea discussions through mediation.
¶36 Moreover, the court issued the mediation order at Justice's behest, after he was unsuccessful in obtaining a more favorable offer from the People. Under these circumstances, requiring the People to participate in mediation was tantamount to ordering them to consider a different offer. This, too, transgressed sections 16-7-301(1) – (2) and 16-7-302(1). ¶37 The district court and Justice alternatively maintain that trial courts have inherent authority to order mediation in criminal cases. We disagree. The district court and Justice misunderstand the inherent authority doctrine. ¶38 Trial courts have inherent authority to carry out their duties, including as reasonably required to allow them to efficiently perform their judicial functions; to protect their dignity, independence, and integrity; and to effectuate their lawful actions. Laleh v. Johnson, 2017 CO 93, ¶ 21, 403 P.3d 207, 211–12. But "the inherent power of courts is not unlimited, and courts must proceed ‘cautiously’ when invoking the inherent authority doctrine." Id. at ¶ 21, 403 P.3d at 212 (quoting Pena v. Dist. Ct., 681 P.2d 953, 957 (Colo. 1984) ). That which causes a court to invoke its inherent authority "must be reasonably necessary" for the court's proper functioning. Id. (quoting Pena, 681 P.2d at 957 ).
¶39 Ordering mediation in a criminal case is not reasonably necessary for a trial court's proper functioning. To the contrary, doing so may hinder the court's proper functioning because, as arguably occurred here, it may inadvertently land the court smack in the middle of the plea bargaining process and compromise the court's role as a neutral arbiter. ¶40 In any event, whatever a trial court's inherent authority, it cannot be used as a license to contradict statutes or rules. Just a couple of terms ago, in Kilgore, ¶ 26, 455 P.3d at 751, it was the People urging us to lean on a trial court's inherent authority. Such authority, they asserted, justified the court's order requiring disclosure of a defendant's exhibits before trial. Id. We declined the invitation because nothing in Crim. P. 16 permitted the court to require the challenged disclosure. Id. at ¶ 25, 455 P.3d at 751. We explained that a trial court's inherent authority could not expand the contours of Crim. P. 16. Id. at ¶ 26, 455 P.3d at 751.
¶41 Now the shoe is on the other foot—it's the defense attempting to justify an order based on a trial court's inherent authority. We reach a similar conclusion as in Kilgore : Whatever a trial court's inherent authority, it cannot alter sections 16-7-301(1) – (2) and 16-7-302(1). ¶42 Notably, to effectuate its mediation order, the district court required the parties to submit certain information to the mediator. Specifically, the court ordered each party to provide to the mediator "a confidential settlement statement" and any documents that might help him understand the "strengths and weaknesses of either party." But we are not aware of any authority permitting a Colorado trial court in a criminal case to order the parties, over their objection, to submit a confidential settlement statement and other case-related information to a mediator.5 Hence, the mediation order, in addition to being out of step with the statutes and rules controlling plea bargaining, contained a requirement that stood on shaky footing.
¶43 In sum, compulsory mediation is a square peg, and squeeze it as a trial court might, it does not fit in the round hole of criminal litigation. The district court, though well-intentioned, erred in ordering mediation in this criminal case.
IV. Conclusion
¶44 For the foregoing reasons, we conclude that a trial court lacks the authority to order mediation in a criminal case. Because the district court required mediation, and because the mediation order arguably involved the court in the plea bargaining process, we make absolute the rules to show cause.
1 The People filed C.A.R. 21 petitions in only two cases (the cases now before us): one in the case in which private counsel represents Justice and another in one of the cases in which a deputy public defender represents Justice. According to the People, they proceeded in this fashion because they understood the district court's written order to apply to only these two cases.
2 Although there are three orders in play (the oral order, the written order, and the referral order), they are compatible with one another. Therefore, we refer generally to the mediation order.
3 Crim. P. 11(f) contains provisions that shadow those found in sections 16-7-301(1) –(2) and 16-7-302(1).
4 Once the parties reach a tentative plea agreement, they may seek permission to share with the trial court "the tentative agreement and the reasons therefor in advance of the time for tender of the plea"; the court, in turn, may then inform the parties whether it will "concur in the proposed disposition." § 16-7-302(2).
5 Of course, if the parties in a case (including a criminal one) agree to mediation, the mediator may require them to submit a confidential settlement statement and other case-related information. Similarly, in a civil case in which compulsory mediation is authorized, the mediator may require the parties to do the same.