1
 2025 CO 2 The People of the State of Colorado, Petitioner v. Jesus Rodriguez-Morelos. Respondent No. 22SC982
Supreme Court of Colorado, En Banc
January 21, 2025

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 19CA915

 Attorneys for Petitioner: Philip J. Weiser, Attorney General
Wendy J. Ritz, First Assistant Attorney General Caitlin E.
 Grant, Assistant Attorney General Denver, Colorado

 Attorneys for Respondent: Megan A. Ring, Public Defender Kira
 L. Suyeishi, Deputy Public Defender Denver, Colorado

 JUSTICE HART delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 HOOD, JUSTICE GABRIEL, JUSTICE SAMOUR, and JUSTICE
 BERKENKOTTER joined. JUSTICE HOOD, joined by JUSTICE
 BOATRIGHT, specially concurred in the judgment.

 OPINION

 HART,
 JUSTICE

 ¶1
 In 2015, Jesus Rodriguez-Morelos started running Certified
 Nursing Assistant ("CNA") classes, falsely telling
 prospective students that the classes were affiliated with
 the nonprofit organization United with Migrants. After
 receiving complaints about the classes, including that
 Rodriguez-Morelos was unlawfully receiving money for classes
 the state had not approved, the Colorado Department of
 Regulatory Agencies ("DORA") investigated.

 ¶2
The People charged Rodriguez-Morelos with several crimes,
 including identity theft in violation of section
18-5-902(1)(a), C.R.S. (2024), which prohibits the knowing
 use of "the personal identifying information ... of
 another" to obtain a financial benefit. The statute
 defines "[p]ersonal identifying information" as
 certain documents and information that can be used to
 identify "a specific individual." §
 18-5-901(13), C.R.S. (2024). Given the statutory language,
 Rodriguez-Morelos argues that he could not be found guilty of
 identity theft under this provision because the classes he
 offered were associated with a nonprofit organization and not
 a specific individual.[1]

 ¶3
We agree. The provision of the identity-theft statute that
 references personal identifying information applies only to
 information concerning single, identified human beings. We
 therefore affirm the judgment of the court of appeals.

 I.
Facts and Procedural History

 ¶4
 In 2015, Rodriguez-Morelos, who had previously worked as a
 volunteer for United with Migrants and other organizations
 providing aid to the migrant community, began offering CNA
 classes in that community. Without United with Migrants's
 authorization, he told prospective students the classes were
 affiliated with the nonprofit and held himself out as the
 group's "Director of Education" - a position
 that did not exist. Without the nonprofit's knowledge, he
 gave some students a tax-exempt document bearing United with
 Migrants's name. Each student enrolled in these classes
 paid $63 to Rodriguez-Morelos. Over time, he added other
 programs related to the medical profession at additional
 cost, also without the nonprofit's authorization.

 ¶5
 Eventually, problems with these classes came to light: they
 were overcrowded; students felt that they were not learning
 the requisite skills; and Rodriguez-Morelos refused to
 provide students with receipts for their payments. Reverend
 Carol Meredith, who worked at an Aurora-based church where
 Rodriguez-Morelos volunteered, filed a report about the
 classes with DORA,

 complaining about Rodriguez-Morelos's practices. DORA
 investigated and found that the CNA classes were not state
 approved, which meant Rodriguez-Morelos could not legally
 receive money for them.

 ¶6
The People charged Rodriguez-Morelos with three counts of
 theft, one count of criminal impersonation, and one count of
 identity theft. A jury convicted Rodriquez-Morelos as
 charged, and he appealed.

 ¶7
 A division of the court of appeals affirmed the judgment of
 conviction for the theft and criminal impersonation charges
 but vacated the conviction for identity theft. People v.
 Rodriguez-Morelos, 2022 COA 107M, ¶ 1, 522 P.3d
 213, 217. The division concluded that Rodriguez-Morelos's
 use of the nonprofit organization's name and tax-exempt
 document was not the use of personal identifying information
 under the id entity-theft statute because the statute defines
 "personal identifying information" as information
 pertaining to an individual, not an organization.
Id. at ¶ 26, 522 P.3d at 220. The People
 petitioned for certiorari review, arguing that a nonprofit
 organization could also have statutorily covered personal
 identifying information. We granted the petition and now
 affirm the division's judgment.

 IL
 Analysis

 ¶8
 This matter presents a straightforward question of statutory
 interpretation, which we review de novo. See McCoy v.
 People, 2019 CO 44, ¶ 37,442 P.3d 379,389.

When we interpret statutes, we read the General
 Assembly's chosen language in context and construe it
 "according to the rules of grammar and common
 usage." Id. We avoid interpretations that would
 render any words or phrases superfluous. Id. at
 ¶ 38, 442 P.3d at 389; People v. Rojas, 2019 CO
 86M, ¶¶ 11-12, 450 P.3d 719, 721.

 ¶9
 Examining section 18-5-902(1) (a) with these precepts in
 mind, we conclude that Rodriguez-Morelos's use of United
 with Migrants's name and tax-exempt document did not
 constitute the use of personal identifying information under
 the statute.

 ¶10
 Colorado's identity-theft statute provides that a person
 commits identity theft if that person: "[k]nowingly uses
 the personal identifying information, financial identifying
 information, or financial device of another without
 permission or lawful authority with the intent to obtain
 cash, credit, property, services, or any other thing of value
 or to make a financial payment. . . ." §
 18-5-902(1) (a).

 ¶11
"Personal identifying information," "financial
 identifying information," and "financial
 device" are each statutorily defined. Neither the
 language in the definition of "financial identifying
 information," see § 18-5-901(7), nor the
 language in the definition of "financial device,"
see § 18-5-901(6), tether this type of
 information only to human beings -or generally to the
 identity of the

 information holder. Instead, both definitions focus on
 different tools that can be used "to obtain cash,
 credit, property, services, or any other thing of value or to
 make a financial payment." § 18-5-901(7). The
 principal difference between the two definitions is that
 subsection 901(6) covers physical instruments or devices
 -such as checks or credit cards -and subsection 901(7)
 includes the type of information appurtenant to those devices
 - such as checking account or credit card numbers. §
 18-5-901(6)-(7).

 ¶12
 In contrast, the definition of "personal identifying
 information" in section 18-5-901(13) has a different
 focus.

"Personal identifying information" means
 information that may be used, alone or in conjunction with
 any other information, to identify a specific
 individual, including but not limited to a name; a date
 of birth; a social security number; a password; a pass code;
 an official, government-issued driver's license or
 identification card number; a government passport number;
 biometric data; or an employer, student, or military
 identification number.

§ 18-5-901(13) (emphasis added).

 ¶13
 Notably, only human beings can possess most of the types of
 information listed in this definition of "personal
 identifying information." An organization does not have
 a social security number, a date of birth, a
 government-issued driver's license or identification card
 number, a passport number, biometric data, or a student or
 military identification number.

 ¶14
The People argue, however, that organizations do or could
 have some of the identifying information included
 within the definition - such as a name, which is what
 Rodriguez-Morelos used in this case to lend credibility to
 his classes - or a password or pass code. They further note
 that the definition of "personal identifying
 information" is not exclusive and that there might be
 other personal identifying information that an organization
 could hold.

 ¶15
 These are both legitimate points. But we cannot ignore the
 fact that most of the identifying information
 included in this definition is exclusive to human beings, and
 we must read the definition in that light. Moreover, the
 General Assembly further indicated its intent to apply this
 aspect of the identity-theft statute to humans and not to
 organizations through the limitation of "personal
 identifying information" to what is used to identify
 "a specific individual." See id.

 ¶16
The statute does not define the term "specific
 individual," but dictionary definitions and common usage
 point in only one direction. We agree with the division's
 cogent analysis of the best way to read the dictionary
 definitions of these words when they are used together.
Rodriguez-Morelos, ¶ 25, 522 P.3d at 219.
"Specific" means "constituting or falling into
 a specifiable category." Specific,
 Merriam-Webster Dictionary,
 https://www.merriam-webster.com/dictionary/ specific
 [https://perma.cc/M8US-E47Q]. "Individual" is
 defined as "a particular being or thing as distinguished
 from a class, species, or collection: such as (1) a

 single human being as contrasted with a social group or
 institution" or "a particular person."
Individual, Merriam-Webster Dictionary, https://
 www.merriam-webster.com/dictionary/individual
 [https://perma.ee/JJ3V-W3AG], As the division concluded, the
 best reading of these definitions together is that an
 "individual" means "a single human being as
 contrasted with a social group or institution."
Rodriguez-Morelos, ¶ 25,522 P.3d at 219. This
 reading "gives voice to both the noun and the
 adjective" without rendering the adjective
 "specific" superfluous. Id.

 ¶17
The People's final argument is that the class of victims
 contemplated by the statute includes organizations as well as
 individuals and that the division's reading of the
 statute ignores that legislative intent. In particular, they
 observe that section 18-5-902(1)(a) prohibits the use of the
 "personal identifying information, financial identifying
 information, or financial device of another"
 and that "another" includes both individuals and
 organizations. (Emphasis added.) Therefore, they argue,
 personal identifying information must include information of
 organizations.

 ¶18
We agree that the phrase "of another" defines the
 class of victims under the statute. And organizations are
 included in that class of victims. See §
 18-5-901(11) (defining "another" to include both
 "a natural person" and "a business
 entity"). But reading personal identifying information
 as pertaining only to human beings

 does not render this phrase superfluous. Organizations are
 within the class of victims protected by the statute because
 a defendant can be convicted of identity theft by using the
 financial identifying information or financial device of an
 organization. As we have explained, however, the definition
 of personal identifying information within the statutory
 scheme is focused on specific individuals and does not apply
 to organizations. For that particular type of identity theft,
 a defendant can only be convicted when the crime is committed
 against a specific human person.

 ¶19
 Therefore, based on the plain language of the statute,
 Rodriguez-Morelos did not commit identity theft against
 United with Migrants when he used the nonprofit's name
 and distributed the tax-exempt document without permission.
Neither act constitutes the use of (1) personal identifying
 information as contemplated in the statute; (2) financial
 identifying information; or (3) the financial device of the
 organization.

 III.
Conclusion

 ¶20
 Colorado's identity-theft statute provides that personal
 identifying information concerns only single, identified
 human beings and not nonprofit organizations. We therefore
 affirm the judgment of the court of appeals.

 JUSTICE HOOD, joined by JUSTICE BOATRIGHT, specially
 concurred in the judgment.

 JUSTICE HOOD, joined by JUSTICE BOATRIGHT, specially
 concurring.

 ¶21
 While the majority reaches the right conclusion under our
 rules of statutory interpretation, I believe that
 Colorado's identity theft statute is ambiguous, and the
 legislature might have intended a different result. So, I
 join the majority's opinion, but I write separately to
 urge the General Assembly to clarify its intent.

 I.
Analysis

 ¶22
 Under Colorado law, a person commits identity theft if he
"[k]nowingly uses the personal identifying
 information, financial identifying information, or
 financial device of another without permission or
 lawful authority with the intent to obtain cash, credit,
 property, services, or any other thing of value or to make a
 financial payment." § 18-5-902(1)(a), C.R.S. (2024)
(emphases added).

 ¶23
 On the one hand, the term "of another" defines the
 class of victims as both "a natural person" and
 "a business entity." § 18-5-901(11), C.R.S.
(2024); see also Maj. op. ¶ 18 (acknowledging
 that "'another' includes both individuals and
 organizations"). Moreover, the definitions of
 "financial identifying information" and
 "financial device" contain terms that apply to a
 victim who is a natural person or that is an entity. §
 18-5-901 (6)-(7); see also Maj. op. ¶ 11. On
 the other hand, the definition of "personal identifying
 information" mostly contains terms that would apply to a
 natural person. § 18-5-901(13); see also Maj.
 op. ¶ 13.

 ¶24
 The key to the present dispute is whether entities can be
 victims of identity theft involving the use of personal
 information and not just involving the use of financial
 identifying information and the use of a financial device.
§ 18-5-902(1)(a). Did the General Assembly intend that
 an entity -such as United with Migrants -could be the victim
 of identity theft when the defendant's conduct involves
 the use of the items or information included in the
 definition of personal identifying information?

 A.
Statutory Interpretation

 ¶25
 In interpreting a statute, our primary purpose is to
 effectuate the intent of the General Assembly. McCoy v.
 People, 2019 CO 44, ¶ 37, 442 P.3d 379, 389. We
 first look to the plain language of the statute, giving
 "words and phrases their plain and ordinary
 meanings." Id. "[W]e must avoid
 constructions that would render any words or phrases
 superfluous or lead to illogical or absurd results."
Id. at ¶ 38, 442 P.3d at 389.

 ¶26
 A statute is ambiguous if it is reasonably susceptible to
 multiple interpretations. Id. If the meaning of the
 statute is unambiguous, we need not employ other interpretive
 tools. Id. If it is ambiguous, "then we may
 consider other aids," such as employing tools of
 statutory construction, considering the statute's
 legislative history, and considering "the end to be
 achieved by the statute." Id.; see also St. Vrain
 Valley Sch. Dist. RE-1J v. A.R.E. ex rel. Loveland, 2014
 CO 33, ¶ 11, 325 P.3d 1014, 1019; § 2-4-203(1),
 C.R.S. (2024)

("If a statute is ambiguous, the court, in determining
 the intention of the general assembly, may consider among
 other matters: (a) The object sought to be attained
 ....").

 B.
Both Interpretations Are Reasonable

 ¶27
The statute is ambiguous because both the majority's and
 the Attorney General's interpretations of the statute are
 reasonable.

 ¶28
 As noted above, the identity theft statute prohibits wrongful
 use of three types of information "of another" -
 personal identifying information, financial identifying
 information, and a financial device. § 18-5-902(1)(a).
The term "of another" means both "a natural
 person" or "a business entity." §
 18-5-901(11).

 ¶29
 But the statute also defines "personal identifying
 information" as:

information that may be used, alone or in conjunction with
 any other information, to identify a specific
 individual, including but not limited to a name; a date
 of birth; a social security number; a password; a pass code;
 an official, government-issued driver's license or
 identification card number; a government passport number;
 biometric data; or an employer, student, or military
 identification number.

§ 18-5-901(13) (emphasis added). Unfortunately, the
 statute doesn't tell us what "specific
 individual" means.

 ¶30
 The majority reasons that because most items listed in the
 definition apply only to natural persons, this type of
 identity theft can only be inflicted on victims who are
 natural persons. The majority's analysis implicitly (and
 soundly) rests on the "well-worn canon of statutory
 construction, noscitur a sociis, 'a word may be

 known by the company it keeps.'" St. Vrain
 Valley Sch. Dist., ¶ 22, 325 P.3d at 1021-22
(quoting Graham Cnty. Soil &Water Conservation Dist.
 v. United States ex rel. Wilson, 559 U.S. 280, 287
(2010)). According to the canon, because terms such as
 "date of birth," "social security
 number," "driver's license,"
"passport number," and "biometric data"
 can only belong to a natural person, the remainder of the
 terms should be similarly limited. This canon also helps
 clarify "employer, student, or military identification
 number," suggesting that the General Assembly may have
 intended "employer identification number" to mean a
 number that an employer assigns an employee (rather than one
 assigned to an entity employer).

 ¶31
 The majority also reasonably relies on dictionary definitions
 and common usage analysis of "specific individual"
 that indicate that the term means "a single human being
 as contrasted with a social group or institution." Maj.
 op. ¶ 16 (quoting Individual, Merriam-Webster
 Dictionary,
 https://www.merriam-webster.com/dictionary/individual
 [https://perma.cc/JJ3V-W3AG]).

 ¶32
 Conversely, the Attorney General reasonably asserts that the
 General Assembly's definition of the term "of
 another," which includes entities, seems designed to
 encompass all three types of identity theft.
Likewise, section 2-4-401(8), C.R.S. (2024), states:
 "The following definitions apply to every statute,
 unless the context otherwise requires: . . . 'Person'
 means any individual, corporation, government or governmental
 subdivision or agency, business trust, estate, trust,

 limited liability company, partnership, association, or other
 legal entity." This definition suggests that
 "personal information" could include the
 information of an entity.

 ¶33
The Attorney General also notes that the General Assembly
 could have used "natural person" instead of
 "specific individual" if it wished to constrain the
 definition of personal identifying information to that one
 class of victims. The General Assembly also doesn't
 explain why it would limit identity theft involving
 personal identifying information to natural persons when the
 other forms of identity theft are more expansive.

 ¶34
 Lastly, the Attorney General asserts that the legislative
 history points toward the General Assembly's intent that
 entities can be victims of all three types of identity theft.
The Attorney General notes that one witness before the House
 Judiciary Committee, who was introduced to explain the
 "technicalities" of the bill, stated that it was
 important that the definition of the term "of
 another" includes entities. Hearing on H.B. 1326 before
 the H. Judiciary Comm., 65th Gen. Assemb., 2d Sess. (Feb. 23,
 2006).

 ¶35
The Attorney General's interpretation of the text is
 sufficiently compelling to render the statute ambiguous. This
 ambiguity permits us to consider the legislative history.
However, I'm not persuaded that the legislative history
 is helpful in resolving that ambiguity. In the House
 Judiciary Committee, one bill

 sponsor briefly mentioned the cost of identity theft to
 businesses along with the toll it takes on citizens.
Id. But those testifying in favor of the bill before
 both the House and Senate Judiciary Committees, including the
 witness cited by the Attorney General, shared stories in
 which the victims were exclusively natural persons.
Id.; Hearing on H.B. 1326 before the S. Judiciary
Comm., 65th Gen. Assemb., 2d Sess. (Apr. 24, 2006). And when
 the House Judiciary Committee voted to strike an instance of
 "a person" and replace it with "another"
 in the description of the crime, the bill sponsor emphasized
 that "another" encompasses both living and dead
 persons and later, before the whole House of Representatives,
 described the impact of identity theft on the families of
 deceased victims, with no mention of entities. Hearing on
 H.B. 1326 before the H. Judiciary Comm., 65th Gen. Assemb.,
 2d Sess. (Feb. 23, 2006); Second Reading of H.B. 1326 before
 the House, 65th Gen. Assemb., 2d Sess. (Apr. 11, 2006).

 ¶36
 Even though the legislative history is cryptic, we may also
 consider the object that the General Assembly wished to
 attain. The identity theft statute's use and definition
 of the term "of another" suggest that the General
 Assembly's goal was to protect natural persons
 and entities in Colorado from being victimized by
 identity theft. Given this overarching purpose, it seems odd
 to conclude that the General Assembly nonetheless meant to
 exclude entities from the protection afforded to those whose
 personal identifying information is stolen (particularly

 the entity's name). Yet, the majority's reasoning
 wins the day under the law governing statutory
 interpretation.

 ¶37
 Because the definition of "personal identifying
 information" is reasonably susceptible to multiple
 interpretations, its meaning is ambiguous. Although the
 majority's analysis is reasonable, it seems the
 legislature might have intended a different result. I
 therefore respectfully urge the General Assembly to clarify
 its intent.

---------

[1] We granted certiorari to review the
 following issue:

1. Whether the court of appeals erred in holding that
 the crime of identity theft does not apply to a business
 entity's personal identifying information and applies
 only to information concerning single, identified human
 beings.

---------