1 

2026 CO 2
 In Re The People of the State of Colorado, Plaintiff: v. Juan Manuel Castorena, Defendant: 
No. 25SA179
Supreme Court of Colorado, En Banc
January 12, 2026
 Original Proceeding Pursuant to C.A.R. 21 Adams County District Court Case No. 20CR1055 Honorable Brett M. Martin, Judge 
 Attorneys for Plaintiff: 
 Alexis King, District Attorney, First Judicial District 
 Rebecca A. Adams, Senior Appellate Deputy District Attorney 
 Golden, Colorado 
 Attorneys for Defendant: 
 Megan A. Ring, Public Defender 
 John Walsh, Deputy Public Defender 
 Jeffrey Simonek, Deputy Public Defender 
 Brighton, Colorado 
 Attorneys for Respondent Adams County District Court: 
 Philip J. Weiser, Attorney General 
 
2

 Emily Burke Buckley, Assistant Solicitor General 
 Denver, Colorado 
 Attorneys for Respondent Seventeenth Judicial District Attorney's Office: 
 Brian S. Mason, District Attorney, Seventeenth Judicial District 
 Todd Bluth, Senior Deputy District Attorney 
 Brighton, Colorado 
 Attorneys for Amicus Curiae Korey Wise Innocence Project: 
 Jud Lohnes 
 Boulder, Colorado 
 JUSTICE HOOD delivered the Opinion of the Court, in which CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER joined. 
 
3

 OPINION 
 HOOD JUSTICE 
 ¶1 In this original proceeding involving both the First and Seventeenth Judicial Districts, we consider whether, under Crim. P. 16(I)(c)(2), a trial court may order a nonparty to disclose materials or information to a defendant during pretrial discovery. We conclude that it may, but such orders are enforceable only if the court also obtains personal jurisdiction over the nonparty. Because the nonparty at issue here wasn't properly served, the trial court lacked personal jurisdiction over it. Therefore, the trial court's order is void. 
 I. Facts and Procedural History 
 ¶2 The Office of the District Attorney for the Seventeenth Judicial District ("the 17th DA") charged Juan Manuel Castorena with first degree murder. Castorena's trial took place in the Seventeenth Judicial District, and a jury convicted him as charged. On appeal, a division of the court of appeals vacated his conviction, based on an evidentiary error, and remanded the case for a new trial. People v. Castorena, No. 22CA1591 (Oct. 24, 2024). 
 ¶3 While that appeal was pending, the Colorado Bureau of Investigation ("CBI") disclosed that a former CBI forensic scientist, Yvonne "Missy" Woods, was "the subject of an internal affairs and criminal investigation after discovering anomalies in her work as part of DNA testing in the lab." CBI Dep't of Pub. Safety, Former CBI Scientist Under Investigation, https://cbi.colorado.gov/news-article/ 
 
4

 former-cbi-scientist-under-investigation [https://perma.cc/F5AA-QMRX]. The internal investigators reviewed hundreds of cases that might have been affected by Woods's alleged misconduct. CBI Dep't of Pub. Safety, Colorado Bureau of Investigation Releases Internal Affairs Report into Former Forensic Scientist Missy Woods, https://cbi.colorado.gov/news-article/colorado-bureau-of-investigation-releases-internal-affairs-report-into-former-forensic [https://perma.cc/LC2D-PLBM]. 
 ¶4 The Office of the District Attorney for the First Judicial District ("the 1st DA") later filed over 100 criminal charges against Woods based on her alleged criminal misconduct over fifteen years at the CBI. First Jud. Dist. Att'y's Off., Former CBI Lab Analyst Missy Woods Facing Criminal Charges, https://firstda.co/ news-update/former-cbi-lab-analyst-missy-woods-facing-criminal-charges/ [https://perma.cc/3TS3-ZR4C]. The prosecution of Woods is ongoing. 
 ¶5 Woods had testified for the prosecution in Castorena's first trial because she had analyzed the DNA evidence in his case. Because Castorena was concerned that Woods might have mishandled that evidence, he filed a "notice of assertion of due process and statutory right[s]" during the pretrial phase of his second trial, demanding samples of the DNA evidence for independent testing. 
 ¶6 Castorena also sent a letter to the 17th DA, requesting disclosure of information related to the government's investigation of Woods and her work, 
 
5

 including CBI internal affairs/quality-control investigations and the 1st DA's criminal investigation. Castorena recognized that the 17th DA was unlikely to have actual possession of the information he requested because Woods was being prosecuted by the 1st DA. Even so, he claimed that the 17th DA had "a statutory and constitutional obligation to cause these materials to be in [its] possession." Therefore, pursuant to Rule 16(I)(c)(1), Castorena requested that the 17th DA "make 'diligent good faith efforts to cause such material to be made available to the defense.'" 
 ¶7 Castorena subsequently asked the court to order the 1st DA to disclose Woods's entire investigative file and sought sanctions against the 17th DA for violating Rule 16's disclosure requirements. The 17th DA denied that it had violated Rule 16 and thus objected to sanctions. 
 ¶8 The court held a hearing on the matter and, under Rule 16(I)(c)(2), ordered the 1st DA to disclose "the complete investigative criminal file for Jefferson County District Court case number 25CR136, People v. Yvonne Woods, . . . to the defendant and his attorneys." The court further ordered Castorena to serve the order on the 1st DA, and it provided a deadline for the 1st DA to object or to move to quash the subpoena. About ten days later, the defense emailed notice of the court's order to the 1st DA, indicating that they had also mailed a copy of the order. 
 
6

 ¶9 The 1st DA entered a special appearance to object to the court's order, arguing that (1) the court lacked jurisdiction over it as a nonparty in Castorena's case; (2) Rule 16 was an improper vehicle for obtaining the information requested; and (3) it hadn't been served with a proper subpoena. The 1st DA also petitioned this court for relief under C.A.R. 21 and moved the trial court to stay its discovery order pending resolution of the Rule 21 motion. The trial court granted the stay, and we issued an order to show cause.[1] 
 II. Analysis 
 ¶10 We first explain our jurisdiction to hear this case and provide the relevant standard of review. We then broadly discuss the contours of pretrial criminal discovery in Colorado and the necessity of establishing personal jurisdiction before a court may issue enforceable orders. Finally, we consider the facts of this case and whether the trial court exceeded its authority by issuing the order here. 
 A. Jurisdiction and Standard of Review 
 ¶11 We have sole discretion to exercise our original jurisdiction under C.A.R. 21. C.A.R. 21(a)(2); People v. Maes, 2024 CO 15, ¶ 8, 545 P.3d 487, 490. Doing so, 
 
7

 however, "is an extraordinary remedy limited in purpose and availability." Maes, ¶ 8, 545 P.3d at 490 (quoting People v. Owens, 2018 CO 55, ¶ 4, 420 P.3d 257, 258); see also C.A.R. 21(a)(2). We therefore grant such relief "only when no other adequate remedy is available." C.A.R. 21(a)(2); see also Maes, ¶ 8, 545 P.3d at 490. 
 ¶12 In this case, the 1st DA's petition raises jurisdictional concerns. "We often review challenges to personal jurisdiction under C.A.R. 21 because they raise the question of whether it is fair to require" someone to appear before the court at all. Griffith v. SSC Pueblo Belmont Operating Co., 2016 CO 60M, ¶ 8, 381 P.3d 308, 312. In such situations, a conventional appeal might be inadequate because any harm is irreparable. See Solliday v. Dist. Ct., 313 P.2d 1000, 1002 (Colo. 1957). So it is here. Therefore, we exercise our original jurisdiction. 
 ¶13 We review de novo whether the trial court "exceed[ed] the bounds of its legal authority" by issuing the order in question. People v. Chavez, 2016 CO 20, ¶ 7, 368 P.3d 943, 944. 
 B. Pretrial Discovery in Criminal Cases 
 ¶14 In Colorado, there is no right to discovery in criminal cases, and courts have "no freestanding authority to grant criminal discovery beyond what is authorized by the Constitution, the rules, or by statute." People v. Silva-Jaquez, 2025 CO 11, ¶ 19, 564 P.3d 650, 654 (quoting People v. Kilgore, 2020 CO 6, ¶ 15, 455 P.3d 746, 749). Here, because the trial court relied on Rule 16 to order the 1st DA to disclose 
 
8

 the Woods case file to Castorena, we begin our analysis by considering the scope of Rule 16. See Kilgore, ¶ 16, 455 P.3d at 750. 
 ¶15 Crim. P. 16, titled "Discovery and Procedure Before Trial," controls discovery in criminal cases. It requires a prosecutor to "make available to the defense [specifically enumerated] material and information which is within the possession or control of the prosecuting attorney," Crim. P. 16(I)(a)(1), as well as "any material or information within his or her possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor," Crim. P. 16(I)(a)(2); see also People in Int. of E.G., 2016 CO 19, ¶ 23, 368 P.3d 946, 952. 
 ¶16 If a defendant seeks information that isn't in the prosecutor's possession or control, Rule 16 requires prosecutors to "use diligent good faith efforts" to make available for the defense any material or information designated by the defense that "would be discoverable if in the possession or control of the prosecuting attorney and which is in the possession or control of other governmental personnel." Crim. P. 16(I)(c)(1). "[I]f the prosecuting attorney's efforts are unsuccessful and such material or other governmental personnel are subject to the jurisdiction of the court," the court "shall issue suitable subpoenas or orders to cause such material to be made available to the defense." Crim. P. 16(I)(c)(2). 
 
9

 ¶17 With this language in mind, we consider whether Rule 16 authorized the court to order the 1st DA to disclose the Woods materials to Castorena either because the 1st DA is (1) part of the prosecution at issue here or (2) "other governmental personnel" over which the trial court may exercise its jurisdiction. 
 1. The Prosecution 
 ¶18 Information is within the prosecutor's possession or control if it is "in the possession or control of members of [the prosecutor's] staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report, or with reference to the particular case have reported, to [the prosecutor's] office." Crim. P. 16(I)(a)(3). 
 ¶19 Colorado's prosecutors share similar responsibilities, but they aren't monolithic. Each district attorney's office is distinct and only has the authority to perform its constitutional and statutory duties within its judicial district. See Colo. Const. art. VI, §§ 10, 13 (creating judicial districts and requiring each district to have an elected district attorney who shall carry out the various duties within that district); § 20-1-102(1), C.R.S. (2025) ("Every district attorney shall appear in behalf of the state and the several counties of his or her district ...."); see also People v. Taylor, 732 P.2d 1172, 1178 (Colo. 1987) (explaining that a "district attorney is vested with authority to initiate criminal prosecutions for crimes committed within the geographical boundaries of the judicial district served by the district 
 
10

 attorney," but has no authority "to initiate a criminal prosecution for crimes committed outside his judicial district"). This authority confirms what intuition suggests: The 1st DA isn't a member of the 17th DA's staff. Castorena makes no argument to the contrary. 
 ¶20 Moreover, the record fails to reveal that the 1st DA was involved, in any way, in the 17th DA's investigation into Castorena's alleged offenses. 
 ¶21 Therefore, the 1st DA's materials aren't in the possession or control of the relevant prosecuting attorney-the 17th DA. 
 2. Other Governmental Personnel 
 ¶22 The parties agree that the 1st DA is, however, "other governmental personnel." Crim. P. 16(I)(c). So, the trial court has authority to order the 1st DA to disclose the requested materials if (1) the 1st DA is "subject to the jurisdiction of the court" and (2) the material would be discoverable if it were in the prosecutor's possession. Id. 
 ¶23 "A court's jurisdiction is defined as 'its "power to entertain and to render a judgment on a particular claim"'"-that is, it "'is the court's authority to hear and determine a matter.'" In re People in Int. of S.A., 2022 CO 27, ¶ 5, 511 P.3d 597, 600 (quoting People v. C.O., 2017 CO 105, ¶ 21, 406 P.3d 853, 858). Jurisdiction takes two forms: "(1) subject matter jurisdiction-the power to determine a specific type of claim; and (2) personal jurisdiction-the power over a specific party." Id. 
 
11

 ¶24 District courts are courts of general jurisdiction and therefore enjoy broad subject matter jurisdiction. Colo. Const. art. VI, § 9(1); S.A., ¶ 6, 511 P.3d at 600; People v. Sprinkle, 2021 CO 60, ¶ 16, 489 P.3d 1242, 1245. It is undisputed that the trial court had subject matter jurisdiction here. But a trial court's jurisdiction over "nearly all criminal matters," Strepka v. People, 2021 CO 58, ¶ 13, 489 P.3d 1227, 1230, doesn't provide the court with personal jurisdiction over a nonparty. See United Bank of Boulder, N.A. v. Buchanan, 836 P.2d 473, 477 (Colo.App. 1992); accord ReMine ex rel. Liley v. Dist. Ct., 709 P.2d 1379, 1381 (Colo. 1985). 
 3. Personal Jurisdiction: Service of Process 
 ¶25 To establish personal jurisdiction over a nonparty, there must be valid service of process. Sebastian Holdings, Inc. v. Johansson, 2025 COA 60, ¶ 17, 574 P.3d 720, 726. Rule 16 doesn't contain a service-of-process provision. And "an omission from Rule 16 signifies something a district court lacks authority to order, not something it has authority to order." Kilgore, ¶ 26, 455 P.3d at 751 (explaining that a court "has authority to order only discovery that is specifically authorized by Rule 16"). Thus, Rule 16, on its own, doesn't provide a court with personal jurisdiction over a nonparty in a criminal case. 
 ¶26 But we don't construe criminal procedural rules in a vacuum; instead, we read the rules "in pari materia with the other rules . . . 'to provide for the just determination of criminal proceedings.'" People v. Arellano-Avila, 20 P.3d 1191, 1192-93 (Colo. 2001) 
 
12

 (quoting Crim. P. 2). As a result, we must consider whether other criminal procedural rules can provide the missing procedure by which a court can establish personal jurisdiction over a nonparty. 
 ¶27 Remember that Crim. P. 16(I)(c)(2) authorizes a court to "issue suitable subpoenas or orders" to facilitate a defendant's discovery of materials held by governmental personnel other than the prosecuting attorney. 
 ¶28 Let's start with the service of a subpoena. Crim. P. 17 "governs subpoenas in criminal prosecutions," People v. Baltazar, 241 P.3d 941, 942 (Colo. 2010), and grants parties "the right to compel the attendance of witnesses and the production of tangible evidence by service upon them of a subpoena to appear for examination as a witness upon the trial or other hearing," Crim. P. 17; see also E.G., ¶ 20, 368 P.3d at 951. Rule 17 allows materials to be produced before trial "under the supervision of the court in order to facilitate and expedite trials involving voluminous documents." People v. Spykstra, 234 P.3d 662, 668 (Colo. 2010). 
 ¶29 Rule 17 also provides the requirements for proper service of any subpoena to produce witnesses or materials. It explains the requisite contents of the subpoena, who may serve it, and methods for effectuating proper service; it also allows for challenges to compliance. Crim. P. 17. Thus, Rule 17 provides a mechanism to properly serve a nonparty and establish personal jurisdiction over them, which provides the trial court with the authority to issue a "suitable 
 
13

 subpoena" under Crim. P. 16(I)(c)(2) to compel other governmental personnel to disclose materials. 
 ¶30 We have consistently interpreted the scope of a court's Rule 17 subpoena power to be limited. Although "a defendant has a right to obtain material, exculpatory evidence from the prosecution, which 'if suppressed, would deprive the defendant of a fair trial,'" E.G., ¶ 23, 368 P.3d at 952 (quoting United States v. Bagley, 473 U.S. 667, 675 (1985)), "[t]here is no broad constitutional right of a defendant to access the court's powers to conduct his own investigation," id. at ¶ 25, 368 P.3d at 952-53; see also Spykstra, 234 P.3d at 669 (explaining that Rule 17 doesn't "create an equivalent to the broad right of civil litigants to discovery of all information that is relevant or may lead to the discovery of relevant information"). 
 ¶31 Rule 17 subpoenas are not intended to be used as investigative tools and therefore may not "provide for expanded discovery" beyond what is authorized by Rule 16. Baltazar, 241 P.3d at 943-44; see also Spykstra, 234 P.3d at 668; 6 Wayne R. LaFave et al., Criminal Procedure § 24.3(f), Westlaw (5th ed. database updated Nov. 2025) (explaining that Rule 17 "permits subpoenas to obtain evidence, but not to look for it"). To ensure Rule 17 subpoenas aren't misused, when a defendant seeks discovery of nonparty materials, the defendant must show: 
 

 (1) A reasonable likelihood that the subpoenaed materials
 exist, by setting forth a specific factual basis;
 

 

 (2) That the materials are evidentiary and relevant;
 

 
14

 

 (3) That the materials are not otherwise procurable
 reasonably in advance of trial by the exercise of due
 diligence;
 

 

 (4) That the party cannot properly prepare for trial without
 such production and inspection in advance of trial and that
 the failure to obtain such inspection may tend unreasonably
 to delay the trial; and
 

 

 (5) That the application is made in good faith and is not
 intended as a general fishing expedition.
 

 Spykstra, 234 P.3d at 669 (footnote omitted). This showing ensures that any subpoena issued under Rule 17 is "suitable" for Rule 16 purposes and not merely an exploratory excursion for information that may not otherwise be discoverable. See id. at 668-69; cf. Arellano-Avila, 20 P.3d at 1193 ("The subpoena requirement is an important constraint on the court's ability to order depositions, because the court must direct a subpoena to issue for the party to be deposed. It logically follows that the court may not order a deposition of any person who may not be legally served a subpoena."). 
 ¶32 But what if, instead of a subpoena, a trial court, as it did here, issues an order under Crim. P. 16(I)(c)(2)? After all, that rule allows the court to issue "suitable subpoenas or orders," id. (emphasis added), and because Rule 17 only applies to subpoenas, its service-of-process procedures wouldn't apply. This means that, to avoid rendering the term "orders" superfluous, we must turn to other rules that could govern service. See People v. Rodriguez-Morelos, 2025 CO 2, ¶ 8, 562 P.3d 71, 73. 
 
15

 ¶33 Crim. P. 49(c) explains how to serve parties with a court order, but it doesn't address service on a nonparty. No rule of criminal procedure does. Crim. P. 57(b), however, explains that "[i]f no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these Rules . . . and shall look to the Rules of Civil Procedure and to the applicable law if no Rule of Criminal Procedure exists." 
 ¶34 Turning to the Colorado Rules of Civil Procedure, C.R.C.P. 4(e) "sets forth the general rule for service of process on individual persons [and various corporate entities] within Colorado," including service to nonparties to the case. Buchanan, 836 P.2d at 477. It requires personal service to the individual, to the registered agent of an organization, or to the principal officer of a state agency. C.R.C.P. 4(e). If a party is unable to accomplish personal service, they may ask the court to allow service by mail if they satisfy certain conditions. C.R.C.P. 4(f)-(g). 
 ¶35 Accordingly, if the court issues a Crim. P. 16(I)(c)(2) order that compels a nonparty's compliance, the court must obtain personal jurisdiction over that nonparty through proper service under C.R.C.P. 4. See Sebastian Holdings, ¶ 17, 574 P.3d at 726; Gilford v. People, 2 P.3d 120, 125 (Colo. 2000) ("A defect in personal jurisdiction may arise where the departure from statutory procedure concerns notice, service of process, or residency limitations on a court's jurisdiction."). "If service does not conform to [C.R.C.P.] 4's requirements, the court does not obtain 
 
16

 personal jurisdiction over the [individual,] and any resulting judgment is void." Minshall v. Johnston, 2018 COA 44, ¶ 13, 417 P.3d 957, 960; see also Sebastian Holdings, ¶¶ 17-21, 574 P.3d at 726-27; Colorow Health Care, LLC v. Fischer, 2018 CO 52M, ¶ 21, 420 P.3d 259, 263 ("[J]urisdictional statutes trigger strict compliance ...."). 
 ¶36 And, any order issued under Crim. P. 16(I)(c)(2), even if properly served, must be a "suitable" one. Crim. P. 16(I)(c)(2) ("The court shall issue suitable subpoenas or orders ...."); see also Hobbs v. City of Salida, 2025 CO 50, ¶ 20, 576 P.3d 164, 168 ("[W]hen a sentence uses a parallel construction of all nouns in a series, 'a prepositive . . . modifier normally applies to the entire series.'" (quoting Antonin Scalia &Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012))). So, the court must ensure that, like a subpoena, its orders adhere to Rule 16's limited scope and aren't used to pursue fishing expeditions. See E.G., ¶ 25, 368 P.3d at 952-53 (explaining that defendants have no constitutional right to use a court's orders as investigative tools or to demand disclosures beyond those authorized by Rule 16); People v. Dye, 2024 CO 2, ¶ 55, 541 P.3d 1167, 1178 (explaining that a trial court may not "surpass the limits of its authority pursuant to the terms of Crim. P. 16"). 
 ¶37 Castorena argues that, regardless of Rule 16's grant of authority, a trial court's inherent authority to enforce its lawful orders provides the basis for a Rule 16 order. He emphasizes that, "a trial court has inherent authority to carry 
 
17

 out its duties, including as reasonably required to allow it to efficiently perform its judicial functions; to protect its dignity, independence, and integrity; and to effectuate its lawful actions." Silva-Jaquez, ¶ 28, 564 P.3d at 655. And this inherent authority provides courts with "ample discretion" to manage cases before trial. Kilgore, ¶ 1, 455 P.3d at 747. 
 ¶38 But that discretion is not unlimited. "[A] court's authority to order discovery must be rooted in a constitutional provision, statute, or rule." Silva-Jaquez, ¶ 39, 564 P.3d at 657. A court "may not rely on its case-management discretion to order disclosures that exceed the discovery authorized by Rule 16." Kilgore, ¶¶ 1, 26, 455 P.3d at 747-48, 751 (explaining that a court may not rely on its inherent authority and discretion to "expand the contours" of Rule 16); accord Silva-Jaquez, ¶ 44, 564 P.3d at 657 ("Disregarding the legal boundaries of discovery in criminal cases in the name of expediency via a trial court's inherent authority at once invites chaos and undermines the Judicial Branch's interest in the uniform administration of justice."). 
 ¶39 Moreover, a court's inherent authority allows the court to enforce only its lawful orders, and "[w]ithout personal jurisdiction, a court is 'powerless to proceed' and cannot enter binding orders against a party." S.A., ¶ 5, 511 P.3d at 600 (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999)). 
 
18

 ¶40 Therefore, the court's inherent authority doesn't provide a trial court with the authority to order a nonparty in a criminal case to disclose materials in its possession. And although Crim. P. 16 does authorize a trial court to issue "suitable subpoenas or orders" on a nonparty, the court must obtain personal jurisdiction over the nonparty through proper service, either under Crim. P. 17 or C.R.C.P. 4. 
 C. Application 
 ¶41 Here, the trial court recognized the limits of its Rule 16 authority to order a nonparty to disclose material. The court found that the material would be discoverable if in the 17th DA's possession and that the 17th DA would be unable to obtain the material through diligent good-faith efforts. (As to the latter point, defense counsel conceded "that it would not be fruitful for the 17th DA to make requests of the 1st [DA] for the records of an ongoing criminal prosecution.") Lastly, the trial court reaffirmed that a Rule 16 order may not be used by the defense to avoid a Spykstra analysis. It therefore ordered the defense to properly serve the 1st DA and recognized that the 1st DA was entitled to notice and an opportunity to be heard on any motion to quash. Thus, the trial court's order largely aligns with our holding today. 
 ¶42 But Castorena never properly served the 1st DA with the court's Crim. P. 16(I)(c)(2) order. Although defense counsel physically mailed and emailed notice of the order to the 1st DA, knowledge of the existence of an order may not 
 
19

 substitute for valid service of process. Weber v. Williams, 324 P.2d 365, 369 (Colo. 1958). Nor did the 1st DA's special appearance to challenge jurisdiction and to object to the lack of service of a Rule 17 subpoena waive proper service.[2] Delta Cnty. Mem'l Hosp. v. Indus. Claim Appeals Off., 2021 COA 84, ¶ 22, 495 P.3d 984, 991 ("[A] non-party may appear specially to contest a court's personal jurisdiction over it and such special appearance may not result in the court's acquiring personal jurisdiction over the non-party."). 
 ¶43 Therefore, because Castorena never properly served the 1st DA with the court's order, the trial court never established personal jurisdiction over the 1st DA, and its order compelling disclosure of the Woods files under Rule 16 is void. See S.A., ¶ 30, 511 P.3d at 605; cf. Nickerson v. Network Sols., LLC, 2014 CO 79, ¶ 9, 339 P.3d 526, 529 ("A judgment is void if the court lacked personal jurisdiction over the parties ...."). Because we resolve the matter based on the court's lack of 
 
20

 jurisdiction, we need not address whether the information sought would be discoverable if it were in the 17th DA's possession. If proper service is made after the case is remanded, the trial court should complete this analysis by addressing the Spykstra factors enumerated above. 
 III. Conclusion 
 ¶44 We make absolute the order to show cause, vacate the trial court's order, and remand the case for further proceedings consistent with this opinion. 
 JUSTICE GABRIEL dissented. 
 
21

 JUSTICE GABRIEL, dissenting. 
 ¶45 The trial court below issued an order pursuant to Crim. P. 16(I)(c)(2) requiring the First Judicial District Attorney's office to produce certain documents. The court further required that its order be served on that office, and it gave that office time to file a motion to quash. Like the majority, I believe that this procedure fully complied with the requirements of Crim. P. 16(I)(c) and properly recognized that service was necessary to establish the requisite personal jurisdiction over the First Judicial District Attorney's office, a non-party to this case. Accordingly, the only issue is whether that office was properly served. Unlike the majority, I believe that it was. 
 ¶46 In concluding that the trial court's order was not properly served here, the majority does not acknowledge (and indeed does not even mention) the undisputed fact that the First Judicial District Attorney's office has never taken issue with the manner in which it was served (it argued only that the trial court lacked personal jurisdiction over it because the court issued an order under Crim. P. 16(I)(c)(2), rather than a subpoena under Crim. P. 17, an argument that is different from whether service was properly effectuated and that the majority correctly rejects). It is undisputed that Juan Manuel Castorena's counsel delivered the trial court's order to the First Judicial District Attorney's office and that that office actually received the order, without objection. In these circumstances, I 
 
22

 believe that the First Judicial District Attorney's office has waived any objection to the manner in which it was served, and the trial court therefore properly exercised personal jurisdiction over that office. To hold otherwise, as the majority does, elevates form over substance and serves no purpose other than to require Castorena's counsel to go through the pro forma exercise of re-delivering the trial court's order to the First Judicial District Attorney's office, this time observing the formalities of service under C.R.C.P. 4(e), which will put us in precisely the same position that we are in today. 
 ¶47 Accordingly, I respectfully dissent. 
 I. Factual Background 
 ¶48 This is yet another case in which a criminal defendant who was convicted in a trial involving Missy Woods's DNA analysis is seeking to obtain files held by the People regarding Woods and in which the People are vigorously resisting that effort, despite the obvious fact that at least some of the information will eventually need to be turned over to these criminal defendants. 
 ¶49 Here, Castorena requested documents related to Woods's prosecution by the First Judicial District Attorney's office. Castorena properly made this request under Crim. P. 16, and the Seventeenth Judicial District Attorney's office, which is prosecuting the case here, made diligent efforts to obtain those documents from the First Judicial District Attorney's office (as the majority observes, Maj. op. ¶ 22, 
 
23

 the latter office constitutes "other governmental personnel" within the meaning of Crim. P. 16(I)(c)(1)). The First Judicial District Attorney's office, however, refused to provide any of these documents. 
 ¶50 Castorena thus requested that the trial court issue, pursuant to Crim. P. 16(I)(c)(2), "suitable subpoenas or orders to cause such material to be made available to the defense." The court ultimately granted that request, finding good cause to do so under that rule. The court then ordered Castorena to serve its order on the First Judicial District Attorney's office within seven days, and the court set a time by which that office could file a motion to quash or an objection to its order. 
 ¶51 Castorena's counsel (through their lead investigator) timely "served" the court's order on the First Judicial District Attorney's office by email and regular mail. Notably, in her email, the investigator asked the First Judicial District Attorney's office to let her know if there were any questions. That office does not appear to have responded with any questions. Nor did it at any time (including up until today) assert that this manner of service was improper or otherwise insufficient. 
 ¶52 Thereafter, the First Judicial District Attorney's office entered a special appearance in this case and argued that the trial court had no jurisdiction over it because, in that office's view, the court could obtain jurisdiction only by way of a subpoena under Crim. P. 17. The court ultimately rejected this argument and 
 
24

 stood by its earlier order, noting that it had acted under the authority of Crim. P. 16(I)(c)(2) and that it had "found good cause to issue 'suitable subpoenas or orders' to cause [the requested] material to be made available to the defense." In so ruling, the court reiterated that it had provided the First Judicial District Attorney's office with the opportunity to file a motion to quash, and the court observed, contrary to Castorena's position, that in addressing any such motion, the court would consider the factors governing production set forth in People v. Spykstra, 234 P.3d 662, 669-71 (Colo. 2010). 
 ¶53 The First Judicial District Attorney's office then filed the present C.A.R. 21 petition, arguing that the trial court lacked jurisdiction over it, a non-party to this proceeding, and therefore the court had no jurisdiction to order it to respond to a discovery request without serving a subpoena under Crim. P. 17 (in contrast to an order under Crim. P. 16(I)(c)(2)). We issued an order to show cause. 
 II. Analysis 
 ¶54 Crim. P. 16(I)(c) provides, in pertinent part: 
 

 (1) Upon the defense's request and designation of
 material or information which would be discoverable if in the
 possession or control of the prosecuting attorney and which
 is in the possession or control of other governmental
 personnel, the prosecuting attorney shall use diligent good
 faith efforts to cause such material to be made available to
 the defense.
 

 

 (2) The court shall issue suitable subpoenas or
 orders to cause such material to be made available to
 the defense, if the prosecuting
 

 
25

 

 attorney's efforts are unsuccessful and such material or
 other governmental personnel are subject to the jurisdiction
 of the court.
 

 (Emphasis added.) 
 ¶55 Like the majority, I believe that the trial court properly issued the order pursuant to Crim. P. 16(I)(c). After Castorena requested materials that no one disputes would be discoverable in the hands of the Seventeenth Judicial District Attorney's office, the court required that office to use diligent good faith efforts to obtain the materials from the First Judicial District Attorney's office, which constitutes "other governmental personnel" under Crim. P. 16(I)(c)(1). After finding that the Seventeenth Judicial District Attorney's office had made such efforts but was unsuccessful in obtaining the materials, the court exercised its discretion under Crim. P. 16(I)(c)(2) to issue "suitable subpoenas or orders to cause such material to be made available to the defense." (Emphasis added.) 
 ¶56 Then, perhaps recognizing that there was at least some question as to whether the First Judicial District Attorney's office should be treated as a non-party, the court ordered that Castorena effect service on that office and expressly gave the office an opportunity to file a motion to quash the order. 
 ¶57 In my view, this procedure was appropriate, and it enabled the court to obtain personal jurisdiction over the First Judicial District Attorney's office in precisely the same way that it would have obtained personal jurisdiction over the office had Castorena served a subpoena. Cf. Sebastian Holdings, Inc. v. Johansson, 
 
26

 2025 COA 60, ¶ 17, 574 P.3d 720, 726 (noting that service of process is a prerequisite to a court's obtaining personal jurisdiction over a defendant). 
 ¶58 As a result, the only issue regarding personal jurisdiction is whether the First Judicial District Attorney's office was properly served. That office, however, has never contested the manner in which it was served (i.e., by email and regular mail, rather than through a process server). Accordingly, I believe that it has waived any objection to the manner of service. Cf. C.R.C.P. 12(b)(2), (4) (distinguishing between an objection on the ground of lack of personal jurisdiction, which is the objection that the First Judicial District Attorney's office unsuccessfully pursued in this case, and an objection on the ground of insufficiency of service, which that office has never asserted). 
 ¶59 For these reasons, I would conclude that through the uncontested service of the trial court's Crim. P. 16(I)(c)(2) order on the First Judicial District Attorney's office, the court properly exercised personal jurisdiction over that office, and I would therefore discharge our order to show cause. 
 ¶60 In concluding that Castorena did not properly serve the trial court's order on the First Judicial District Attorney's office, the majority ignores the fact that that office has never objected-and has therefore waived any objection-to the manner in which the order was served. And it was perfectly rational for that office to forego such an objection. It is undisputed that Castorena's counsel sent the order 
 
27

 to that office and that the office actually received it. In addition, I would fully expect that had Castorena's counsel asked the First Judicial District Attorney's office to accept service, it would have done so (and may well do so when we return this case to the trial court). 
 ¶61 In light of the foregoing, the only practical effect of the majority's ruling will be to require Castorena's counsel to go through the pro forma exercise of re-delivering the trial court's order to the First Judicial District Attorney's office, this time strictly observing the formalities of service under C.R.C.P. 4(e). Once this exercise is complete, we will be in precisely the same position that we are in today, namely, awaiting a motion to quash from the First Judicial District Attorney's office, after which the trial court will determine which portions of the Woods files that office will be required to produce. The extra step makes little sense to me, other than to delay this case further than it has already been delayed. 
 III. Conclusion 
 ¶62 For these reasons, I agree with the majority that the trial court properly followed the requirements and procedures set forth in Crim. P. 16(I)(c). Unlike the majority, however, I would conclude that the First Judicial District Attorney's office waived any objection to the manner in which the trial court's order was served on it and, therefore, the trial court properly exercised personal jurisdiction over that office. I would thus discharge our order to show cause. 
 
28

 ¶63 Accordingly, I respectfully dissent. 
 --------- 
 Notes: 
 [1] The issue in the petition is framed as follows: 
 
 Whether the 17th Judicial District Court had
 jurisdiction over the First Judicial District Attorney's
 Office-a non-party to an Adams County criminal case-to order
 it to respond to a request for discovery pursuant to Crim. P.
 16(I)(c)(2) without the proper service of a subpoena in
 accordance with Crim. P. 17.
 
 [2] Although the 1st DA's motion didn't use the term "personal jurisdiction," the effect of the motion was to object to the court's authority to order the 1st DA, a nonparty, to disclose material absent personal jurisdiction as established through proper service of process. Because subject matter jurisdiction can never be waived, Sprinkle, ¶ 17, 489 P.3d at 1246, the only purpose in filing such a motion would have been to object to the lack of personal jurisdiction, James v. James, 262 P. 925, 926 (Colo. 1927); see also City of Thornton v. Pub. Utils. Comm'n, 391 P.2d 374, 376 (Colo. 1964). Thus, the 1st DA preserved the issue of proper service of an order establishing personal jurisdiction. See Sebastian Holdings, ¶ 17, 574 P.3d at 726 ("[V]alid service of process . . . is a prerequisite for the district court's personal jurisdiction."). 
 ---------